IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CASE NO. 1:25-cv-3029

ANDREW QUENTIN  TAAKE

        Plaintiff,

v.

UNITED STATES OF AMERICA,
COLETTE S.  PETERS as the
DIRECTOR OF THE FEDERAL
BUREAU OF PRISONS, and
PAM BONDI, Attorney General,
As Head of the U.S. DEPARTMENT
OF JUSTICE and Successor to
MERRICK GARLAND

        Defendants.

_____/

## COMPLAINT UNDER THE FEDERAL TORT CLAIMS ACT, BIVENS AND 42 U.S.C. §1983 AND FOR VIOLATION OF CIVIL RIGHTS

The Plaintiff, ANDREW QUENTIN TAAKE  ("Taake"), by and through his undersigned attorneys, here by brings suit against The United States of America, Colette S. Peters as the Director of the Federal Bureau of Prisons, and Pam Bondi, Attorney General of the United States of America, successor to Merrick Garland and as Head of the U.S. Department of Justice, as follows.

1.      This Court has jurisdiction in that Taake is a citizen of the State of Texas and his suit is against agencies of the federal government of the United States.  The jurisdiction stems from claims under federal statutes.

2.      This is a complaint by a former January 6 criminal defendant, demanding a jury trial and alleging violations of civil rights in violation of *Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971)* and 42 U.S.C. §1983, as well as separately property destruction and personal injuries

in violation of the Federal Tort Claims Act (FTCA).

3.     Andrew Taake the Plaintiff, a citizen of Buffalo, in Leon County, Texas, within the U.S. District Court for the Southern District of Texas, Houston Division, arrived at the U.S. Capitol on January 6, 2021, to engage in constitutionally protected speech, petitioning and advocacy.  While protesting at the Capitol, Taake observed an officer of the D.C. Metropolitan Police Department, Nathan Tate, using unlawful excessive force against a fellow protestor.  Taake quickly protected the fellow protestor by spraying defensive bear spray.

4.     Later on January 6, 2021, while Taake was on the upper terrace of the U.S. Capitol, an unknown Metropolitan Police Department officer, John Doe 1, stomped on Taake's hand causing disfigurement.

5.     On or around July 21, 2021, Taake was arrested by the Merrick Garland Justice Department and charged with various criminal charges in the U.S. District of the District of Columbia.

6.     Taake found himself prosecuted for (among other things) "assault with a deadly and dangerous weapon" for defending the other protestor on January 6. [i]

7.     The prosecution—under the guidance and direction of Attorney General Garland and D.C. U.S. Attorney Matthew Graves—knowingly used false, misleading and/or doctored evidence—to prosecute Taake.

8.     While Taake was locked up in the U.S. Prison system, Taake sought medical care but was knowingly and deliberately denied treatment, denied proper testing and treatment, deprived of medical care, and wrongly injected with massive levels of estrogen and other improper drugs. This caused Taake to develop female breast tissue and leak breast milk.  Fellow inmates harassed and assaulted Taake, and Taake further broke and disfigured his hand while fighting to defend

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

himself.

9.      Taake spent approximately half of his three and one-half years in solitary confinement, abused by staff as well as inmates.  Taake was released by President Trump's pardon on January 20, 2025.  He remains permanently injured, disfigured, and sterile.  Taake brings this lawsuit under the FTCA, Bivens, 42 U.S.C. §1983 to recover his damages.

10.      While still incarcerated, last in Houston, Texas, prior to being pardoned, Taake filed Administrative Claim No. TRT-NER-2024-08359 on August 22, 2024.  The Federal Bureau of Prisons sent a denial letter including the definition of the claim as:

> Your Administrative Claim No. TRT-NER-2024-08359, properly received on August 22, 2024, has been considered for settlement as provided by the Federal Tort Claims Act (FTCA), 28 U.S.C. 2672….
>
> If you are dissatisfied with this decision, you may bring an action raising only your personal injury claim against the United States in an appropriate U.S. District Court within six (6) months of the date of this letter.

11.      Taake, by counsel, rejects the view that claims *outside of the scope of the FTCA's covered claims* are governed by the FTCA or its notice requirements.  Taake asserts that only some of his claims are governed by the FTCA while others such as 42 U.S.C. §1983 are not.

### Jurisdiction And Venue Allegations

12.      This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 (Federal Question Jurisdiction, 42 U.S.C. §1983, and 28 U.S.C. § 1332 Diversity Jurisdiction) because the amount in controversy exceeds $75,000 and there is complete diversity amongst the parties.

13.      This Court also has jurisdiction under the Federal Tort Claims Act, under this Complaint in general, but this is also specifically reinforced with regard to events of January 6, 2021,

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

under 2 U.S.C. 1977.

14.    This Court has supplemental jurisdiction over this case pursuant to 28 U.S.C. §
1367.

15.    Jurisdiction is also proper under *Bivens v. Six Unknown Named Agents*, 403 U.S.
388 (1971), in so far as the actions violate the 1st, 4th, 5th, 6th, 8th and 14th Amendments to the U.S.
Constitution.

16.    To the extent that the District of Columbia and/or its Metropolitan Police
Department are governed by the Federal Government, this Court also has jurisdiction under 28
U.S.C. § 2680(h).

17.    Venue is proper pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391(b)(2), (3)
because the Plaintiff resides in and is a citizen in this judicial district and The Defendants are subject
to personal jurisdiction in this District.

## The Parties And Subordinate Employees

18.    The Plaintiff Andrew Q. Taake is a citizen of Buffalo, in Leon County, Texas.
Taake files with his attorney's address and contact information to avoid or minimize harassment.
Taake requests of the Court permission to file his contact information under seal with sealed copies
to The Defendants if his direct information is required.

19.    Officer Nathan Tate, Metropolitan Police Department, with headquarters at 441 4th
Street, NW, 7th Floor, Washington, DC 20001, is a sworn law enforcement officer of the police
force of the city of Washington, D.C. and responded on orders to the U.S. Capitol building and
grounds on January 6, 2021, to engage in crowd control in a demonstration that then escalated (for
which Plaintiff blames law enforcement officials, primarily the MPD) into attacks on demonstrator
initiated unprovoked by law enforcement and this spawned any physical conflicts and

4

confrontations.

20.    On January 6, 2021, the MPD of Washington, D.C., were agents of the U.S. Government under a pre-existing Memorandum of Understanding to assist the U.S. Capitol Police.

21.    Officer Tate acted in his individual capacity for actions taken under color of federal authority.

22.    As alleged by Taake and also proven on body worn cameras (that is from several different angles as worn on different officers in different places) to have engaged in unprovoked gassing and attacks on non-violent, innocent demonstrators.

23.    On information and belief, it appears that law enforcement officers at or near the U.S. Capitol building and grounds on January 6, 2021, particularly the MPD, falsely believed and acted on the incorrect belief that there was some priority to clear the U.S. Capitol grounds at any and all costs and that unrestrained violence was somehow authorized against demonstrators.

24.    Law enforcement acted as if on the apparent belief that any and all use of force was authorized as a blanket umbrella policy because it was an over-riding imperative to clear the U.S. Capitol Grounds.  On the contrary, the U.S. Capitol Grounds is – as advertised on the U.S. Capitol Police and Architect of the Capitols' websites – a public park open for unrestricted use by the public and indeed tourists from around the world.  One may freely enjoy lunch under one of the trees on the Capitol Grounds and enjoy the park-like atmosphere.

25.    Even today, strikingly absent are any signs or notices of any restriction on the public use of this public park.  Yet extreme violence was initiated by police apparently on the belief that the U.S. Capitol Grounds must be evacuated at all costs.  This is untrue because the U.S. Capitol building is 751 feet long, the size of a medium-sized ocean-going cruise ship, and constantly filled with hundreds if not more than a thousand tourists, visitors, journalists, lobbyists, government

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

officials, etc., etc.  The U.S. Congress functions effectively every business day despite the presence of thousands in and around the building.  In fact, the U.S. Congress' website boasts more than 3 million visitors every year, or over 11,000 visitors per working day.  Therefore, no rationale can be discerned to initiate violence against visitors and peaceful demonstrators simply to empty the U.S. Capitol Grounds.

26.    The Defendant, United States of America, is subject to suit under the FTCA for the tortious acts of its employees acting within the scope of their employment.

27.    The Defendant Colette S.  Peters is the DIRECTOR of the FEDERAL BUREAU OF PRISONS ("BOP").  The Director is responsible for the operations, management, and actions of the nation's federal prisons, including the frequent occasions when the BOP uses State prisons under contract.

28.    The Defendant, Pam Bondi, is the successor Attorney General to Merick B. Garland the former Attorney General of the United States from March 11, 2021 to January 20, 2025, responsible for overseeing the U.S. Department of Justice (DOJ).  She is sued in her capacity as the Attorney General for actions taken under color of federal authority by her predecessor.

## Facts Common To All Counts

29.    This lawsuit, brought under the Civil Rights Act 42 U.S.C.  §1983, the Bivens line of cases, and the FTCA, seeks money damages for the violations of the rights of the Plaintiff under the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution as well as common law claims for medical malpractice, negligence, negligence per se, assault, battery, intentional infliction of emotional distress, and negligent infliction of emotional distress.

30.    On January 6, 2021, the Plaintiff Andrew Taake ("Taake"), a resident of Texas, arrived at the U.S. Capitol on January 6, 2021 to engage in constitutionally protected speech,

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

petitioning and advocacy.

31.     Upon arrival at the Capitol grounds, Taake observed the Defendant Officer Nathan Tate viciously use excessive force by violently punching an innocent protestor, Bart Shively.[1] Taake protected Shively by spraying defensive bear spray toward the area to prevent further excessive violence.  Taake's bear spray barely touched or contacted any officer; as the air became filled and dominated by <u>officer</u>-sprayed O.C. spray which doubled back and blew into officers' faces.

32.     U.S. prosecutors under the direction, supervision and guidance of the Attorney General (then MERRICK GARLAND) and the D.C. U.S. Attorney General (then Matthew Graves), later alleged that Taake's act of heroism was a crime.

33.     Around July 2021, Taake was arrested and prosecuted for various offenses relating to January 6, 2021, including 'assaulting officers with a deadly and dangerous weapon,' a 20-year felony.

34.     Later in the day on January 6, 2021, another Metro P.D. officer (whose name is presently unknown) stomped on, crushed, and disfigured Taake's hands.

35.     Garland's and Graves' prosecutors knew the 'assaulting officer with a deadly and dangerous weapon' charge against Taake was false.  They had access to Tate's bodycam footage which plainly showed Tate knew and recognized that Tate had been sprayed and affected by police O.C.  spray.

36.     Garland and Graves also knowingly charged Taake with *another* 20-year felony which they knew was false: "obstruction of an official proceeding" in violation of 18 U.S.C. §1512(c)(2).  Garland and Graves knew the charge did not apply to mere disruption or delay of

---

[1] Shively, now deceased, was a stranger to Taake at the time.

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

official proceedings by protesting, demonstrating or rioting.

37.    Throughout the four years between January 6, 2021, and January 2025, Garland, Graves, and Mumma used their positions in the U.S. Department of Justice to launch a weaponized system of unlawful and excessive, weaponized prosecutions of protestors on January 6, 2021, in order to create a narrative to rig and tilt the political system and impact American elections, to advance a true insurrection against the government under Donald J. Trump.

38.    Garland and Graves directed that J6 prosecutions be devoid of due process to the degree possible, bringing maximum numbers of convictions and punishments, in order to boost a political narrative.

39.    At Garland's and Graves' direction, Taake was arrested by over 30 officers, with media present.  Agents under the direction of Garland and Graves rummaged through Taake's home and rummaged through Taake's parents' businesses as further harassment.

40.    Stepping out of the shoes of prosecutors, The Defendants Graves and Garland transformed their J6 prosecutions into national security missions.  On June 15, 2021, Attorney General Garland delivered remarks announcing the Biden administration's National Strategy for Countering Domestic Terrorism, released by the National Security Council.  Citing the January 6, 2021, Capitol demonstration, Garland identified "domestic violent extremists" as an "elevated threat" to the homeland, obviously referring to J6ers.

41.    Garland and the other Defendants enlisted the Department of Defense in their operations against J6ers in a whole-of-government push for overzealous prosecution, censorship, and narrative enforcement.

42.    Under the Constitution and controlling ethical and professional obligations, federal

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

prosecutors are to seek justice, fairness, and equity rather than convictions and political retribution.[2] Yet, the Defendants' predecessors used their offices as a charade to pursue unconstitutional, weaponized, retaliation against the plaintiffs and other J6ers.

43.     Garland and Graves directed and supervised underling prosecutors to maximize convictions and punishments.  Despite knowing that the claims against Taake were false, Garland and Graves' prosecutors used the false claims to pressure and manipulate Taake into taking a plea deal which convicted Taake of assaulting officers with deadly and dangerous weapons while other charges were dropped.

44.     The Justice Department's June 5, 2024 press release offered the DOJ's summary:

> Andrew Taake, 35, of Houston, Texas, was sentenced by U.S. District Judge Carl J.  Nichols to 74 months in prison, 36 months of supervised release, and ordered to pay $2,000 in restitution.  Taake pleaded guilty to one count of assaulting, resisting, or impeding certain officers using a dangerous weapon, a felony, on Dec.  20, 2023.

> .  .  .  .  At approximately 1:16 p.m., Taake surged forward toward the police line and sprayed the officers with bear spray from approximately ten feet away for about three seconds, engulfing the officers in a cloud of orange chemicals.

> Five minutes later, at approximately 1:21 p.m., Taake again approached the police line.  This time, he sprayed a group of USCP officers from approximately 30 feet away.  About thirty seconds later, at approximately 1:22 p.m., Taake sprayed a nearby group of USCP and MPD officers from approximately 20 feet away.

> About eight minutes later, at 1:30 p.m., Taake, with his metal whip in one hand and bear spray in the other, joined other rioters in a concerted effort to push the police line back.  Seconds later, Taake reached over the heads of the other rioters and sprayed officers with bear spray for a fourth time.  Approximately three minutes later, Taake, standing amidst the mob, picked up a water bottle and

---

[2] Bennett L.  Gershman, "Hard Strikes and Foul Blows": Berger v.  United States 75 Years After, 42 Loy.  U.  Chi.  L.J.  177 (2010), http://digitalcommons.pace.edu/lawfaculty/657/.

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

launched it over other rioters at the line of officers.

At approximately 2:00 p.m., a group of MPD reinforcements attempted to make their way through the crowd on the northwest side of the grounds and to the West Plaza. Rioters, Taake among them, surrounded the officers and trapped them in place, assaulting them from all sides. https://www.justice.gov/usao-dc/pr/houston-man-sentenced-prison-assaulting-law-enforcement-dangerous-weapons-during-jan-6 (accessed 9/2/2025).

45.    At sentencing, Taake and his counsel were surprised by the unanticipated, newly-invented, fabricated claims by MPD officer Nathan Tate, that Taake had injured Tate on January 6. Nothing in the government's discovery—provided by Garland and Graves's DOJ—had suggested such a thing. Knowing that Officer Tate's statement was false, Garland's and Graves' prosecutors presented the statement as true and helped fabricate false evidence to support the false claim:

My name is Nathan Tate. I am a 35-year-old Metropolitan police officer . . . . On January 6, 2021, . . . I came in contact with an individual, Andrew Taake, (along with numerous individuals unbeknownst to me at the time) and I was: brutally attacked, pepper sprayed, gassed, threatened, and bear sprayed. . . . When I began to walk down the stairs, where the terrorist attack was brewing, all of the insurrectionists were gathered together chanting and moving as one people.

[protestors] began to throw all sorts of debris at us, the officers. I even remember an insurrectionist picking up a sign and passing it across the top of the assembly from left to right. Afterwards, I was pepper sprayed multiple times. When I re-entered the line, I witnessed another rioter becoming extremely irate, and began to issue threats to the officers within this vicinity. As the rioter became more and more irate, he proceeded to assault me. Then I was sprayed with bear spray.

I was immediately blinded. It was the most pain I've ever experienced. It was like living death. It took my breath away. It left me entirely vulnerable. I didn't know where I was. I was reaching around for help from anyone. I made contact with people,

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

but I didn't know if it was a rioter leading me back into the mob or a fellow officer. I eventually made my way back to the scaffolding, I hit my head on the scaffolding twice. At that point I crawled and laid on the steps, thinking that this might be it. I heard someone walk past me. I grabbed their leg and asked for help. They helped me to stand up, but I didn't know who it was so I didn't trust them. I forced my eyes open and held them open with my hands, at which point I was able to get up the stairs and into a safe area and take some time to recover. When I went back to the line, I was still having trouble seeing, but I couldn't not help the other officers still fighting to hold the line.

This is one of the hardest things that I have faced in my life. At times, it is extremely hard to sleep knowing that I could have been one of the officers that didn't make it home to see my family again.[3] My family and friends were forced to see me on the news helping to defend the Capitol while it was under attack. They had no way of knowing if I was okay or if I was going to make it out alive. My children felt like they would never see me again; I, too, was plagued with those thoughts of not making it home and never seeing: my children, brothers, sisters, and friends again.

After it was all said and done that day, they sent us right back to work the next day without allowing us to properly deal with our emotions considering what we had just gone through. I wasn't able to process my personal emotions, feelings, and thoughts after being assaulted and put into a life-threatening position. I had to compress everything I had just experienced and immediately push forward. Now, having to write this statement, I am forced to relive the pain and agony of this dreadful situation.

When I discovered the impact this situation had on me, *I went to therapy* and thought I was getting over this. I was definitely wrong. As the years progress, my full understanding of what happened to me has only gotten clearer. My life and my family's life will never be the same as this situation has placed a lifelong scar on our lives. Statement of MPD Officer Tate, Case 1:21-cr-00498-

---

[3] No officer died on January 6; and none died from any physical injuries relating to January 6. But here Tate is repeating a lie publicly repeated by Garland on multiple occasions that officers died from January 6. Four (4) out of a thousand or more officers died over the subsequent year, which sadly is not statistically different from any other group in America. No hint was ever found of any reason related to January 6, 2021. In fact, some would argue that suicide – as opposed to seeking help and rehabilitation – is a fundamentally illogical act without a reason.

**THE TICKTIN LAW GROUP**
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

CJN  Document  85-1  Filed  06/06/24,  page  1  of  2
(Emphasis added.)

46.    Almost nothing in Defendant Tate's "Victim Impact Statement" was true as it relates to Taake; and Graves, Garland, and Mumma knew this.

47.    All officers are required by MPD policy to immediately report any injuries; but Tate reported no injuries around January 6, 2025.

48.    All officers are also required by MPD policy to immediately report any use of force (either by themselves or against them); yet Officer Tate had reported no use of force on January 6th.

49.    Nor did Officer Tate timely report in writing or otherwise that he had been assaulted as required.

50.    Tate's bodycam footage shows Tate

(1)    Never claimed to have been assaulted by protestors;
(2)    Never said or indicated being hit by "debris" from protestors;
(3)    Never reported being pepper sprayed.  (In actuality, Tate plainly acknowledged being sprayed by "O.C." (Oleoresin Capsicum) (multiple times on the bodycam footage).  And Tate indicated that the "O.C." spray was sprayed by fellow officers.[4]
(4)    Never reported being "blinded." (In fact Tate states to other officers he could see clearly;
(5)    Never fell to his knees.
(6)    Never crawled or laid on the steps.  Moreover,
(7)    Tate's loudest condemnation was against his own supervisors: "Why wouldn't they [supervisors] let us get our stuff?!"

---

[4] Not only does Officer Tate's bodycam footage show Tate acknowledged being hit by police O.C. spray (not "pepper" or "bear" spray by protestors).  But the footage shows Tate avoiding the use of water to wash out the gas from his eyes—consistent with Tate's training and knowledge that *police* O.C. spray becomes reactivated by contact with water, while bear spray does not.  Tate is also seen performing other measures, consistent with contact with O.C.  spray rather than bear spray.

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

(8)    Tate was offered water, but Tate refused, saying "no water!" This was acknowledgment that the spray was POLICE spray; not protestor spray or bear spray. ("They [meaning fellow officers] sprayed them with no regard to us.")

51.    Nonetheless, Tate, Garland and Graves used these manufactured claims to trick Judge Nichols into sentencing Taake to a severe 74-month prison sentence.

52.    Due to the unlawful conduct of The Defendants, Taake suffered a three-and-a-half-year prison horror story. While wrongly imprisoned over the January 6 events, Taake sought medical attention but was denied, delayed, and knowingly misdiagnosed and mistreated.

53.    Due to a longstanding medical hormonal imbalance, Taake needed medical testosterone treatments every seven days. But Medical staff within the D.C. jail and the Bureau of Prisons were openly hostile and deliberately indifferent to Taake's medical needs. Taake contracted and tested positive for tuberculosis, but medical staff provided no treatment.

54.    Taake was taken to the prison at Lewisberg, PA around October 21, 2021. Medical staff at U.S.P. Lewisberg openly mocked Taake, and callously ignored Taake.

55.    Taake sought to have his blood hormone levels tested; but Lewisberg medical staff delayed and denied his requests without reason.

56.    While at Lewisburg, Taake was locked down for three months and had to shower while handcuffed to the shower stall. He suffered weeks of solitary confinement.

57.    Led by Dr. Edinger and overseen by B.O.P. director Collette Peters, the Lewisberg staff wrongly injected Taake with estrogen rather than testosterone, causing Taake to develop female breast tissue and other ailments.

58.    Taake was never allowed to see the medicine bottles themselves.

59.    When Taake's blood was finally tested, his testosterone levels were less than one-tenth of normal.

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

60.    Taake filed grievances, to no avail.  Every response to Taake's grievances was late; then denied on the basis of lateness.

61.    This caused Taake to be harassed, stalked and assaulted by inmates within the prison system.

62.    At the prison in Beaumont, Texas, Taake was beaten by multiple prisoners and forced into the yard.  He suffered broken teeth, massive swelling and a broken nose.

63.    Wrongly identified by BOP staff as a problematic inmate, Taake was transferred to more than a dozen different facilities.

64.    At most prisons, Taake was placed in solitary confinement as punishment.  Taake suffered three prison attacks when fellow prisoners came into his cell and attacked him.  His hand was broken more severely due to fights over breast growth.

65.    While incarcerated, Peters' BOP tormented Taake by staging shakedowns of his cells, during which BOP staff overseen by Peters would wrongly seize Taake's legal and medical papers and records and destroy them.

66.    After Taake's release, Taake's prison property was returned to him with missing medical and legal papers.  Taake should have had two boxes of property, but instead his property was sent to him with a lot of paperwork missing.

67.     Taake was released from prison when President Donald J. Trump pardoned him on January 20, 2025.  He remains permanently injured, disfigured, and sterile.  Taake brings this lawsuit under the FTCA, *Bivens,* 42 U.S.C.  §1983 to recover his damages.

68.    Plaintiff's injuries were proximately caused by the conduct of The Defendants, each and every one of them, jointly and severally.

69.    Plaintiff has received a denial letter from the U.S. Department of Justice which

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

includes notice of the right to sue within 6 months under the Federal Tort Claims Act. This Complaint is timely. The tracking information with the U.S. Postal Service shows that although the letter was dated earlier, it was not mailed on the day written on the letter.

70.     Diagnosed many years before January 6, 2021, including prominently in 2016, Andrew Taake suffers from medical defects of low testosterone.

71.     The Plaintiff suffers from hypogonadism and his treatment was supposed to be testosterone administered _weekly_ (not monthly).

72.     Dr Edinger and the BOP provided incorrect and inadequate treatment (both wrong medication (estrogen) and wrong dosage).

73.     Edinger ignored Taake's complaints of pain or symptoms.

74.     Edinger's and Peters' breach of duty directly and proximately caused Taake's injury or harm.

75.     The harm would not have occurred but for these providers' negligence and the negligence was a substantial factor in causing the harm.

76.     Taake suffered actual harm or injury as a result of the breach.

77.     Taake suffered pain and suffering and emotional distress.

78.     Taake needs additional medical expenses due to the wrongful conduct of these The Defendants.

79.     The care already described was so inadequate that it constitutes "deliberate indifference" to a serious medical need, violating the Eighth Amendment.

80.     Edinger's and Peters' deliberate indifference involved and constituted reckless disregard or intentional neglect.

81.     Dr. Edinger compounded his medical misdiagnosis, failure to test, treat, delay and

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

wrongful treatment by filing false, perjurious and contemptuous statements with the Court claiming that Taake had abused steroids.

82.     Taake's counsel suspects that this might not have been medical negligence but intentional infliction of wrong medication for mockery and political spite.

83.     The estrogen injections caused Taake to develop gynecomastia.

84.     Edinger gave and directed that Taake be injected with estrogen injections which caused his prolactin levels to become elevated. Prolactin is a hormone or trigger that causes women to produce breast milk.  Taake began to produce breast milk.  (Note that most of the time naturally born women do not experience that response until becoming pregnant and giving birth. Thus, the injections of the wrong chemicals were extreme to cause Taake to respond like a female having just given birth.)

85.     On information and belief the BOP probably gave many estrogen injections instead of testosterone injections to create such dramatic effects.

86.     Taake suffers long-term harms due to the misconduct described above.

87.     The actions of the United States, Peters' BOP and Dr. Edinger were not the negligence typical of medical malpractice but intentional assault and battery.

88.     The Defendants acted intentionally or with reckless disregard to cause apprehension of harmful or offensive contact.

89.     The plaintiff experienced reasonable apprehension (fear or expectation) of imminent harmful or offensive contact.

90.     The apprehension is objectively reasonable, meaning a reasonable person in the plaintiff's position would feel threatened.

91.     The defendant's intentional act was directly responsible for Taake's harm.

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

92.    Taake was damaged and has long-lasting serious injuries, medical needs, and emotional distress.

93.    42 U.S.C. § 1983 provides in pertinent part that:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . .

94.    The *Bivens* line of cases provides the same protection regarding unconstitutional conduct by federal officials.

95.    At the time of the events complained herein, Taake possessed the clearly established constitutional right to due process, notice, confrontation, freedom from physical violence, physical abuse, terrorizing, intimidation, fright from assault, and false imprisonment or kidnapping violating the right of liberty and travel, excessive force, and the like.

96.    The Defendants were at all times relevant to this Complaint acting on duty within the terms of their employment and assignment, and not on a "frolic" or detour from their employment and assigned duties, but abusing their positions and offices in violation of the Plaintiffs' rights.

97.    The Defendants formed a retaliatory motive and beat the Plaintiff because they were exercising their First Amendment rights demonstrating at the U.S. Capitol.

98.    The Defendants, acting in concert jointly and severally, possessed a retaliatory motive.

99.    The violations of Plaintiffs' liberty interest and freedom from bodily injury by The Defendants are compensable under *Bivens v.  VI Unknown Named Agents of Federal Bureau of*

17

*Narcotics*, 403 U.S. 388 (1971).

100.    The Defendants knowingly developed, fabricated, and presented a false "victim impact statement" by Tate at Taake's sentencing hearing.

101.    This falsification violated Taake's rights and caused damages to Taake.

**Respondeat Superior Liability As To All Counts**

102.    For all Causes of action stated, Defendant District of Columbia and/or the U.S. Capitol Police are jointly and severally liable under the doctrine of *respondeat superior* for the aforementioned tortious acts and omissions of officers and their supervisors and agencies.

103.    Defendant District of Columbia is jointly and severally liable under the doctrine of *respondeat superior* for the aforementioned tortious acts and omissions of officers and their supervisors and agencies.

104.    The Defendants the United States of America, and the Federal Bureau of Investigation are jointly and severally liable under the doctrine of *respondeat superior* for the aforementioned tortious acts and omissions of officers and their supervisors and agencies.

**Count I – Tort Claims Act for Physical Assault, Perjury,
Interference with Access to the Courts, Intimidation, Harassment,
Withholding of Prescribed Medications, Excessive Force, Etc.**

105.    The Plaintiff avers the allegations of Paragraphs 1 through 104, above, and incorporates the allegations, therein, in this Count by reference as though fully restated, herein.

106.    Taake filed a notice and demand pursuant to the Federal Tort Claims Act within two years of the cessation of a course of tortious conduct, excluding any period in which Taake's claims may have been pending in any court or tribunal.

107.    The FTCA will cover all Taake injuries sounding in tort.

108.    Constitutional violations and other non-tort claims are not covered by or restricted

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

by the Federal Tort Claims Act, but are independently actionable on their own terms.

109.    At the time of the events complained herein, Plaintiff's possessed the clearly established constitutional right to access to courts and control his medical affairs.

110.    The Defendants, especially BOP director Peters, staged periodic shakedowns of Taake's prison cells—where BOP staff removed and destroyed Taake's medical and legal files.

111.    This violated both the FTCA and the Fifth Amendment right to property.

112.    This also violates Taake's right to access the courts, in preparing pleadings and proving documents.

113.    The destruction of Taake's medical records also covers up The Defendants' medical malpractice and violates Taake's medical autonomy.

114.    Frequently, the documentation that Taake was working on to get proper medical care was confiscated and taken away from Taake's cell.  Prison staff said he had "too much paper."

115.    Thereupon, the DOJ's FTCA denial argued that there was "insufficient evidence" of his claim.  But of course, evidence was lacking because BOP destroyed it.

116.    In one FTCA denial, the DOJ again lied and claimed that Taake's condition was due to "elective anabolic steroid use" for which no evidence ever existed, because it is not true.

117.    On the very next page, the DOJ admitted it did not know why Taake was experiencing the symptoms he complained of.

118.    Thus the DOJ explicitly admits having lied on the prior page.

119.    Initially, it should be strongly and clearly recognized that the Federal Torts Claim Act requires submission of notice of intent to sue *for the purpose of pre-lawsuit settlement.*

120.    As explicitly stated in the BOP's and DOJ's denial letter, the denial is explicitly *a*

19

*refusal of the U.S. Government to engage in settlement discussions*.

121.    While the FTCA process and SF-95 process obviously also serves the purpose of providing notice of a dispute to the Government, and provides the opportunity to preserve documents, records, and memories by investigating among its very large work force, this also allows the Government to decide if it does or does not dispute Plaintiff's claim(s).

122.    Here, the U.S. Government having rejected the administrative remedy of settlement negotiations, Taake by counsel has significant legal doubts whether the FTCA process can limit Taake's demands, his *ad damnum* requests, or the scope and nature of his legal claims.

123.    Even if precedents have found otherwise, such a result appears unsound and in the interests of the improvement of justice and the legal system Taake also seeks the over-turning, clarification, or modification of precedent to recognize that the Government has chosen to decline the opportunity to resolve the dispute without the filing of a court case.

124.    Interpretation and application of the FTCA must be guided by its purpose.

125.    Here, diagnosed many years before January 6, 2021, including prominently in 2016, Andrew Taake suffers from medical defects of severely low testosterone.

126.    Plaintiff suffers from hypogonadism and his treatment was supposed to be testosterone administered *weekly* (not monthly).

127.    Dr. Edinger, the United States, and the BOP owed the inmate Andrew Taake a duty to provide medical care consistent with his pre-arrest diagnoses.

128.    Edinger and the BOP injected or allowed to be injected estrogen into Taake when Taake needed testosterone.

129.    The effects on the human body, roughly speaking, of estrogen is the opposite of testosterone.  Therefore, estrogen injections to one with low testosterone is one of the most

20

dangerous and damaging actions that Taake could suffer.

130. Edinger and the BOP ignored Taake's existing diagnoses.

131. The BOP took no action to follow through on Taake's medical records to ensure that identified problems were being addressed.

132. Edinger and the BOP delayed and denied necessary medical treatment (testosterone).

133. The circumstances indicate that Edinger and the BOP acted intentionally out of contempt and disdain for Taake.

134. Upon Taake's arrival at the prison in Lewisburg, Dr. Edinger spontaneously blurted out "Oh! I know who *you* are!"

135. Edinger and the BOP provided incorrect and inadequate treatment (both wrong medication (estrogen) and wrong dosage).

136. Edinger ignored Taake's complaints of pain or symptoms.

137. Edinger's and BOP's actions were conspicuously driven by hostility and antagonism toward Taake, with full awareness, knowledge, and intention.

138. The estrogen injections caused Taake to develop gynecomastia.

139. Taake grew breasts and incredibly experienced production of milk from his male breasts.

140. Edinger gave and directed that Taake be injected with estrogen injections which caused his prolactin levels to become elevated. Prolactin is a hormone or trigger that causes women to produce breast milk. Taake began to produce breast milk. (Note that most of the time naturally born women do not experience that response until becoming pregnant and giving birth. Thus, the injections of the wrong chemicals were extreme to cause Taake to respond not merely

21

as a female but like a female having just given birth.)

141.    On information and belief the BOP gave many estrogen injections instead of testosterone injections to create such dramatic effects.

142.    Taake suffers long-term harms due to the misconduct described above.

143.    Edinger's and Peters' breach of duty directly and proximately caused Taake's injury or harm.

144.    Foreseeably, in the often violent, and often bored, environment of prison where inmates can go searching for something to fight about, Taake was beaten and harassed for having grown female-like breasts.

145.    Foreseeably, Taake was repeatedly injured by other inmates with references to his breast growth.

146.    The harm would not have occurred but for these providers' negligence and the negligence was a substantial factor in causing the harm.

147.    Taake suffered actual harm or injury as a result of the breach.

148.    Taake suffered pain and suffering and emotional distress.

149.    Taake needs additional medical care and expenses due to the wrongful conduct of these defendants.

150.    The care already described was so inadequate that it constitutes "deliberate indifference" to a serious medical need, while incarcerating the victim and preventing him from tending to his own medical needs freely, violating the Eighth Amendment.

151.    Edinger's and Peters' deliberate indifference involved and constituted reckless disregard or intentional neglect.

152.    Dr. Edinger compounded his refusal to test, treat, delay and wrongful treatment by

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

filing false, perjurious and contemptuous statements with the Court claiming that Taake had abused steroids.

153.    Dr. Edinger fabricated this testimony out of nothing.

154.    The actions of the United States, Peters' BOP and Dr. Edinger were intentional assault and battery.

155.    The defendants acted intentionally or with reckless disregard to cause apprehension of harmful or offensive contact.

156.    The plaintiff experienced reasonable apprehension (fear or expectation) of imminent harmful or offensive contact.

157.    The apprehension is objectively reasonable, meaning a reasonable person in the plaintiff's position would feel threatened.

158.    The defendant's intentional act was directly responsible for Taake's harm.

159.    Taake was damaged and has long lasting serious injuries, medical needs, and emotional distress.

160.    Taake also contracted tuberculous while incarcerated.

161.    At USP Lewisburg Taake filed with the prison staff complaints of lung problems.

162.    Taake's requests for medical examination and treatment were ignored and refused.

163.    Plaintiff Taake was shuffled among over one dozen prisons while awaiting trial and serving his sentence after pleading guilty.

164.    In a pattern consistently observed in similar cases of January 6 defendants, the BOP consistently and regularly transferred Taake to a different prison just before the progress of his demands for medical care came close to resulting in action on his medical needs.

165.    In fact, the BOP's denial letter for settlement pursuant to the Federal Torts Claims

23

Act offensively dismisses the seriousness of Taake's claims by stating that Taake in the middle of his attempts to get medical help moved to another BOP prison.

166.    That is, the denial letter argues that it is Taake's fault that Taake was transferred to a different prison before the medical issues could be resolved at each previous BOP prison.

167.    That is, the denial letter argues that it was entirely discretionary if Taake chose to remain at a BOP prison or whether he might choose to walk out the front door and stay at a different BOP prison perhaps more to his liking.

168.    In other words, on its face the U.S. Government's denial letter evidence a false pretext to hide, obscure, and evade the truth of what the Defendants did to Taake.

169.    As noted below, such a pretext can be considered by the jury as evidence of guilt and consciousness of guilt.

170.    Defendants, especially BOP Director Peters and her designated staff and employees staged periodic shakedowns of Taake's prison cells—where BOP staff removed and destroyed Taake's medical and legal files.

171.    This violates both the FTCA and the Fifth Amendment right to property.

172.    This also violates Taake's right to access the courts.

173.    The destruction of Taake's medical records also covered up defendants' mistreatment of Taake's medical conditions and denial of medical assistance and violates Taake's medical autonomy.

174.    Among other problems the systematic and intentional *spoilation* of the evidence of Taake's injuries and his consistent record of documenting them and filing information with the BOP can constitute evidence in favor of the Plaintiff Taake.  Sanctions for spoilation of evidence are not limited to a showing of harmful error but are intended to discourage and prevent such

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

behavior in the future.  Accordingly, a Plaintiff often need not show why evidence was destroyed or made unavailable, what the evidence would have shown, or that the difference was material. It is enough that the courts must protect the legal system against corruption of the evidentiary record.

175.    Among other problems the systematic and intentional *spoilation* of the evidence of Taake's injuries and his consistent record of documenting them and filing information with the BOP constitutes a _pretext_.  The fact of the BOP's intentional confiscation and destruction of evidence becomes under the law affirmative evidence in support of Taake's case in chief of the BOP's consciousness of wrongdoing, intentions and *mens rea*, and intent to undertake and continue the wrongs against Taake.

176.    In some contexts, courts have upheld the law of pretext by likening it to defendants fleeing the scene of a crime when police arrive.  While rebuttable on strong evidence, the attempt to hide from guilt is generally enough to submit the issue to the jury as finder of fact.

177.    Frequently, the documentation that Taake was working on to get proper medical care was confiscated and taken away from Taake's cell.  Prison staff said he had "too much paper."

178.    The BOP's and DOJ's FTCA denial argued that there was "insufficient evidence" of his claim.  But of course evidence was lacking because BOP destroyed it.

WHEREFORE, the Plaintiff asks that this Court enter a final judgment in his favor for compensatory damages for loss of liberty, physical harm, emotional distress, and other injuries and harms amounting to $2,500,000, or the maximum available under the FTCA process, and for such further and other relief as this honorable Court may deem just and proper.

25

## Count II – 42 U.S.C. §1983

179.    The Plaintiff avers the allegations of Paragraphs 1 through 104, above, and incorporates the allegations, therein, in this Count by reference as though fully restated, herein.

180.    42 U.S.C. § 1983 provides in pertinent part that:

> Every person, who under color of [state law] or the District of Columbia subjects or causes or be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . .

.

181.    *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), provides the same protection regarding unconstitutional conduct by officials acting under color of *federal* law.

182.    Constitutional violations and other non-tort claims are not covered by or restricted by the Federal Tort Claims Act, but are independently actionable on their own terms.

183.    Taake pled guilty to assaulting defendant Nathan Tate on December 20, 2023. But during Taake's sentencing hearing on June 5, 2024, defendant Tate, acting under color of state law, provided false testimony by lying about Tate's actions and misrepresented facts in a "victim impact statement." Federal prosecutors acting under the Attorney General, knew, condoned, and approved this false testimony.

184.    Defendant Tate's false statements (aided and abetted by the DOJ) directly influenced the sentencing court's decision, resulting in a harsher sentence, longer incarceration, and loss of liberty.

185.    Defendant Tate acted intentionally or with reckless disregard for the truth, knowing his statements were false or misleading.

186.    As a result, plaintiff Taake suffered extended incarceration, loss of liberty,

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

emotional distress, or other consequences.

187.    Defendant violated plaintiff's Fourteenth Amendment right to due process and Sixth Amendment right to fair proceedings by providing false testimony or fabricated evidence during sentencing, which deprived plaintiff Taake of a fair proceeding, as established in cases like Napue v. Illinois, 360 U.S. 264 (1959).

188.    Defendant's actions were taken under color of state and federal law and proximately caused plaintiff's injuries.

189.    Plaintiff suffered prolonged incarceration, emotional distress, and physical injuries due to defendant Tate's false statements.

190.    Additionally, all the defendants (with the exception of Tate) violated plaintiff's Eighth Amendment right to be free from cruel and unusual punishment by exhibiting deliberate indifference to plaintiff's serious medical needs, as established in Estelle v. Gamble, 429 U.S. 97 (1976).

191.    Defendants knew or should have known of plaintiff's serious medical condition but failed to provide adequate care, proximately causing plaintiff's injuries. The estrogen injections wrongly given by Edinger and Peters caused Taake to develop gynecomastia.

192.    Plaintiff Taake suffered physical harm, emotional distress, and permanent disability or exacerbated hormonal imbalance and resulting condition due to defendant Edinger's actions (in wrongly diagnosing, treating and injecting Taake) and inaction (failure to perform required blood testing, neglect, failure to treat, failure to diagnose).

193.    Additionally, Plaintiff possessed the clearly established constitutional right to access to courts and maintain medical records and control his medical affairs. Defendants staged arbitrary and capricious shakedowns of Taake's prison cells—where BOP staff removed and

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

unlawfully destroyed Taake's medical and legal files.

194.    This violates both the Fifth Amendment right to property as well as Taake's right to access the courts under the 1st 5th, and 6th amendments.

195.    The destruction of Taake's medical records also violates Taake's medical autonomy in violation of the 5th and 8th amendments.

196.    These defendants acted under color of federal law as they committed this unlawful conduct.

WHEREFORE, Plaintiff prays for relief and judgment against each of the Defendants, jointly and severally, as follows: general damages, special damages, punitive damages, pre-judgment and post-judgment interest as allowed by law, costs of suit incurred herein, in an excess amount of $2.5 million for pain and suffering, emotional distress, lack of enjoyment of life and freedom to engage in normal life due to such lingering effects as Post-Traumatic Stress Disorder, and exemplary damages, as may be proven at trial, attorneys' fees, costs, and any other further relief the Court deems just and proper, for the illegal, unconstitutional and intentional and malicious acts of The Defendants, each and every one of them, against the Plaintiffs. Plaintiff's also request injunctive relief for improved training and supervision.

## **Demand For Jury Trial**

Plaintiff demands a trial by jury on all counts as to all issues so triable.


Dated:  September 5, 2025                    Respectfully submitted,

                                            /s/ *Peter Ticktin*

                                            Peter Ticktin, Esquire
                                            Roger Roots, Esquire
                                            **THE TICKTIN LAW GROUP**

**THE TICKTIN LAW GROUP**
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

270 SW Natura Avenue
Deerfield Beach, Florida 33441
Serv606@LegalBrains.com
Serv514@LegalBrains.com
Telephone: 561-232-2222
*Attorneys for the Plaintiff*

ADDITIONAL COURTESY COPIES FILED BY
U.S. MAIL, POSTAGE PREPAID, on or before
September 8, 2025

Ms. Pam Bondi, Esq.
*As representing the United States
of America's interest in the matter*
U.S. Attorney General
950 Pennsylvania Avenue, N.W.
Washington, D.C.
*(Plaintiff assumes that that the
Requirement to notify the U.S.A.
may be routed through different offices
in the very large Dept. of Justice.)*

Ms. Jeanine Pirro, Esq.
U.S. Attorney for the District of Columbia
ATTN:  Civil Litigation Division
        Civil Process Clerk
601 D Street, NW
Washington, D.C. 20579
Switchboard:  (202) 252-7566

---

[i]        Although it may not be directly relevant to the claims here, for the reader to understand the defensive and innocent conduct of the Plaintiff, as context to the charges against Taake, no one can have or use a "deadly *and* dangerous weapon." Taake responds and did respond in the case that he did not, and apparently sprayed bear spray *at no one* but into the air to come to the defense of protestors and children being beaten and/or sprayed with OC tear gas by police. Subsequently Taake pled guilty to the count.  However, no one should let an over-active imagination falsely prejudice Taake.  Instead, the evidence is clear that police lied under oath and in the victim impact statement.

There is legal ambiguity, unresolved, that a "deadly" weapon is one designed to inflict death or severe bodily injury whereas a "dangerous" weapon has no discernible definition at all except in light of what actually happened in the particular circumstances of an individual

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

incident.  One cannot know if an object is "a dangerous weapon" until after the fact based on how someone used it, leading to precedents that a chair, a shoe, the floor are considered dangerous weapons.  This is a forbidden *ex post facto* definition.

But here charging Taake with a "deadly and dangerous weapon" defies logic.  The flawed definitions are unworkable but are self-contradictory between "deadly" and "dangerous.

Taake did not in fact possess or use any deadly or dangerous weapon on January 6, 2021.  The pretext of adding the allegation late in the game of prosecution should be considered evidence of the Defendant's consciousness that their prosecution was false and needed some extra drama to make the cut.

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222