**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLOMBIA**

| |
|---|
| ANDREW QUENTIN TAAKE, |
| Plaintiff, |
| |
| v. |
| |
| UNITED STATES OF AMERICA, et al., |
| |
| Defendants. |

Civil Action No. 25-3029 (EGS)

**COMBINED MOTION FOR PARTIAL DISMISSAL AND TRANSFER OF VENUE**
**AND MEMORADUM OF LAW IN SUPPORT THEREOF**

# TABLE OF CONTENTS

Table of Contents .............................................................................................. ii

Table of Authorities ......................................................................................... iii

Background ......................................................................................................... 1

Legal StandardS ................................................................................................. 3

Argument ............................................................................................................. 5

I.    The United States Is Not Responsible For The Acts Or Omissions Of The District of Columbia Metropolitan Police Department Nor Metropolitan Police Officer Tate .................................................................................................................. 5

II.    The United States Has Not Waived Sovereign Immunity for Plaintiff's Claims ... 6

    A.    The Court Lacks Subject Matter Jurisdiction for Any Claim Under Section 1983 ...................................................................................... 8

    B.    The Court Lacks Jurisdiction Over Plaintiff's Claims Under the Federal Tort Claims Act ................................................................................. 9

III.    Plaintiff Has Not Stated A *Bivens* Claim ................................................ 13

    A.    Plaintiff Has Not Sued Any Defendant In Their Individual Capacity ...... 15

    B.    Plaintiff's claims present a new *Bivens* context ........................................ 16

    C.    Alternative Remedy Structures Are In Place, Precluding An Implied Bivens Remedy ................................................................................... 19

    D.    Plaintiff Fails to State a Claim Against Defendants Peters and Bondi ..... 23

    E.    Defendants Peters is entitled to qualified immunity. ............................... 25

IV.    Plaintiff's Complaint Should Be Transferred to the Middle District of Pennsylvania ................................................................................................. 26

    A.    This Case Could Have Been Brought in the Middle District of Pennsylvania ...................................................................................... 28

    B.    Transfer to the Middle District of Pennsylvania is Otherwise Proper ...... 28

Conclusion ......................................................................................................... 32

# TABLE OF AUTHORITIES

**Cases**

*Arnold v. Moore*,
980 F. Supp. 28 (D.D.C. 1997) ................................................................. 24

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................. 4, 23, 24

*Atchison v. District of Columbia*,
73 F.3d 418 (D.C. Cir. 1996) ................................................................. 7

*Bell v. Wolfish*,
441 U.S. 520 (1979) ................................................................. 21, 22

*Bembenista v. United States*,
866 F.2d 493 (D.C.Cir.1989) ................................................................. 11-12

*Bourdon v. Dep't of Homeland Sec.*,
235 F. Supp. 3d 298 (D.D.C. 2017) ................................................................. 29, 30

*Burke v. Lappin*,
821 F. Supp. 2d 244 (D.D.C. 2011) ................................................................. 25

*Cameron v. Thornburgh*,
983 F.2d 253 (D.C. Cir. 1993) ................................................................. 24, 26

*Clayton v. District of Columbia*,
931 F.Supp.2d 192 (D.D.C. 2013) ................................................................. 3

*Commodity Futures Trading Comm'n v. Nahas*,
738 F.2d 487 (D.C. Cir. 1984) ................................................................. 3

*Cooper v. Johnson*,
652 F. Supp. 2d 33 ................................................................. 8

*Chung v. Chrysler Corp.*,
903 F. Supp. 160 (D.D.C. 1995) ................................................................. 31

*Cox v. Sec'y of Labor*,
739 F. Supp. 28 (D.D.C. 1990) ................................................................. 9, 10

*Ctr. For Env't Sci., Accuracy & Reliability v. Nat'l Park Serv.*,
75 F. Supp. 3d 353 (D.D.C. 2014) ................................................................. 27, 28

*Curran v. Holder*,
626 F. Supp. 2d 30 (D.D.C. 2009) ................................................................. 3

*Daisley v. Riggs Bank, N.A.*,
    372 F. Supp. 2d 61 (D.D.C. 2005) ................................................. 9, 10

*Darby v. Dep't of Energy*,
    231 F. Supp. 2d 274 (D.D.C. 2002) ..................................................... 4

*Davis v. United States*,
    196 F.Supp.3d 106 (D.D.C. 2016) .................................................. 9, 10

*Detar v. United States*,
    174 F. Supp. 3d 566 (D.D.C. 2016) ..................................................... 10

*Aftab v. Gonzalez*,
    597 F. Supp. 2d 76 (D.D.C. 2009) ..................................................... 26

District." *Jones v. Hagel*,
    956 F. Supp. 2d 284 (D.D.C. 2013) ..................................................... 29

*Dye v. United States*,
    516 F. Supp. 2d 61 (D.D.C. 2007) ....................................................... 8

*E.O. v. Sessions*,
    2022 WL 3008025 (D.C. Cir. Jul. 29, 2022) ........................................ 20

*Edmonds v. United States*,
    436 F. Supp. 2d 28 (D.D.C. 2006) ..................................................... 12

*Edwards v. District of Columbia*,
    616 F.Supp.2d 112 (D.D.C. 2009) ..................................................... 11

*Edwards v. Gizzi*,
    No. 20-cv-7371, 2022 WL 309393 (S.D.N.Y. Feb. 2, 2022) ............... 19

*Egbert v. Boule*,
    142 S. Ct. 1793 (2022) ................................. 14, 15, 17, 18, 19, 20, 22, 23

*Epps v. U.S. Att'y Gen.*,
    575 F. Supp. 2d 232 (D.D.C. 2008) ....................................................... 9

*Goldey v. Fields*,
    606 U.S. 942 (2025) ................................................................... 17, 20

*Grand Lodge of Fraternal Order of Police v. Ashcroft*,
    185 F. Supp. 2d 9 (D.D.C. 2001) ......................................................... 4

*Hammond v. Fed. Bureau of Prisons*,
    740 F. Supp. 2d 105 (D.D.C. 2010) ............................................... 10-11

*Hazel v. Lappin*,
    614 F. Supp. 2d 66 (D.D.C. 2009) ....................................................... 6

*Hui v. Castaneda*,
    559 U. S. 799 (2010) ................................................................................. 19

*Jackson v. BOP*,
    657 F. Supp. 2d 176 (D. D.C. 2009) ........................................................ 8

*Jara v. Smith, Case No. 23-CV-1359*
    (APM), 2024 WL 4024645 (D.D.C. Sept. 4, 2024) ................................. 16

*Johnson v. United States*,
    642 F. Supp. 2d 1 (D.D.C. 2009) ....................................................... 24, 25

*Johnson v. Veterans Affairs Med. Ctr.*,
    133 F. Supp. 3d 10 (D.D.C. 2015) ....................................................... 9, 10

*Kim v. United States*,
    632 F.3d 713 (D.C. Cir. 2011) ................................................................. 7

*Kisela v. Hughes*,
    138 S.Ct. 1148 (2018) ............................................................................ 25

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994) ................................................................................. 3

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*,
    507 U.S. 163 (1993) ................................................................................. 3

*Mann v. Castiel*,
    681 F.3d 368 (D.C. Cir. 2012) ............................................................... 15

*Mathis v. Geo Grp., Inc.*,
    535 F. Supp. 83 (D.D.C. 2008) ............................................................. 31

*McAfee v. U.S. Citizenship & Immigr. Servs.*,
    Civ. A. No. 19-2981 (DLF), 2019 WL 6051559 (D.D.C. Nov. 15, 2019) ............ 28

*McCoy v. United States*,
    Civ. A. No. 06-0762 (PLF), 2006 WL 2474102 (D.D.C. Aug. 25, 2006) ............ 31

*McNeil v. United States*,
    508 U.S. 106 (1993) ............................................................................... 11

*Meyer v. Reno*,
    911 F. Supp. 11 (D.D.C. 1996) ......................................................... 24-25

*Miango v. Dem. Rep. Congo*,
    243 F. Supp. 3d 113 (D.D.C. 2017) ........................................................ 8

*Minneci v. Pollard*,
    565 U.S. 118 (2012) ............................................................................... 19

*Mitchell v. Forsyth,*
    472 U.S. 511 (1985) ......................................................................................... 25-26

*Mohammadi v. Scharfen,*
    609 F. Supp. 2d 14 (D.D.C. 2009) ...................................................................... 1, 2

*Morris v. U.S. Sentencing Comm'n,*
    62 F. Supp. 3d 67 (D.D.C. 2014) ............................................................................ 24

*Mullenix v. Luna,*
    136 S.Ct. 305 (2015) ............................................................................................. 25

*Murphy v. United States,*
    121 F. Supp. 2d 21 (D.D.C.2000), aff'd, 64 F. App'x 250 (D.C. Cir. 2003) ......................... 11

*Ohome v. United States,*
    No. 21-cv-368, 2021 WL 5771147 (N.D. Ga. Dec. 6, 2021) ........................................... 19-20

*Oliva v. Nivar,*
    973 F.3d 438 (5th Cir. 2020) .................................................................................... 19

*Overton v. Bazzetta,*
    539 U.S. 126 (2003) .............................................................................................. 22

*Papasan v. Allain,*
    478 U.S. 265 (1986) ................................................................................................ 4

*Parker v. United States,*
    No. 20-CV-0430, 2020 WL 10486669 ....................................................................... 30, 31

*Pearson v. Callahan,*
    555 U.S. 223 (2009) .............................................................................................. 26

*Perkins v. Ashcroft,*
    275 Fed. App'x 17 (D.C. Cir. 2008) ............................................................................ 7

*Pinson v. Dep't of Just.,*
    246 F. Supp. 3d 211 (D.D.C. 2017) .......................................................................... 23

*Poindexter v. D.C. Dep't of Corr.,*
    892 F. Supp. 2d 104 (D.D.C. 2012) ........................................................................ 29, 32

*Pollack v. Meese,*
    737 F. Supp. 663 (D.D.C. 1990) ........................................................................ 16, 26-27

*Procunier v. Martinez,*
    416 U.S. 396 (1974) .............................................................................................. 20

*Risley v. Hawk,*
    108 F.3d 1396 (D.C. Cir. 1997) ................................................................................ 24

*Saucier v. Katz,*
    533 U.S. 194 (2001) ................................................................................ 26

*Scinto v. BOP,*
    352 Fed. Appx. 448 (D.C. Cir. 2009) ................................................... 7-8

*Settles v. U.S. Parole Comm'n,*
    429 F.3d 1098 (D.C. Cir. 2005) ............................................................. 8

*Siegert v. Gilley,*
    500 U.S. 226 (1991) ............................................................................... 26

*Spagnola v. Mathis,*
    859 F.2d 223, 273 U.S. App. D.C. 247 (D.C. Cir. 1988) ...................... 20

*Spence v. VA*
    et al., 109 F. 4th 531 (D.C. Cir. 2024) ................................................. 13

*Stafford v. Briggs,*
    444 U.S. 527 (1980) ............................................................................... 26

*Stoddard v. Wynn,*
    68 F. Supp. 3d 104 (D.D.C. 2014) .......................................................... 6

*Thomas v. United States, Civ. A. No. 24-0404*
    (RDM), 2024 WL 2167624 (D.D.C. May 10, 2024) ............................. 31

*Tookes v. United States,*
    811 F. Supp. 2d 322 (D.D.C. 2011) ....................................................... 11

*United States v. Akinrosotu,*
    637 F.3d 165 (2d Cir. 2011) ................................................................... 22

*United States v. Bollinger Shipyards, Inc.,*
    No. 11-CV-01388, 2012 WL 12987042 (D.D.C. March 30, 2012) ....... 29

*United States v. Mitchell,*
    463 U.S. 206 (1983) ................................................................................. 6

*Varma v. Gutierrez,*
    421 F. Supp. 2d 110 (D.D.C. 2003) ......................................................... 4

*Verizon Washington, D.C., Inc. v. United States,*
    254 F. Supp. 3d 208 (D.D.C. 2017) .................................................... 9, 10

*Washington v. Geren,*
    675 F. Supp. 2d 26 (D.D.C. 2009) ......................................................... 13

*West v. Atkins,*
    487 U.S. 42 (1988) ................................................................................... 8

*Woodford v. Ngo*,
    548 U.S. 81 (2006) ............................................................... 21

*Ziglar v. Abbasi*,
    137 S. Ct. 1843 (2017) ...................................................... 16, 17

**Statues and Regulations**

28 U.S.C. § 1346 ................................................................... 10, 32

28 U.S.C. § 1391 ........................................................... 26, 27, 28

28 U.S.C. § 1404 ...................................................................... 27

28 U.S.C. § 2675 ...................................................................... 11

28 U.S.C. § 2679 .................................................................... 9, 10

34 U.S.C. § 30302 .................................................................... 21

34 U.S.C. § 30307 .................................................................... 21

42 U.S.C. § 1983 ........................................................... 2, 8, 9, 13

42 U.S.C. § 1997e .................................................................... 21

28 C.F.R. § 14.12 ...................................................................... 11

28 C.F.R. § 542.10 .................................................................... 20

28 C.F.R. § 542.10-19 ............................................................... 20

Defendants, the United States of America, the Attorney General, and the Director of the
Bureau of Prisons ("BOP"), by and through undersigned counsel, respectfully move to dismiss the
Corrected Complaint filed by Plaintiff, Andrew Taake (ECF No. 2-1, "Complaint")[1] as to all but
the exhausted Federal Tort Claims Act ("FTCA") claims against BOP and moves to transfer this
action to the Middle District of Pennsylvania. Pursuant to Local Civil Rule 7(m), Defendants have
attempted to meet and confer with Plaintiff, through counsel via email, and have not been able to
ascertain Plaintiff's position.[2]

## BACKGROUND

Plaintiff, who currently resides in Texas, is a former BOP inmate who was in BOP custody
from 2021 through 2025. Compl. (ECF No. 2-1) ¶¶ 5, 9, 22.  Plaintiff was convicted of certain
crimes in connection with the events of January 6, 2021, and was pardoned by President Trump,
which led to his immediate release from BOP custody.  *Id.* ¶¶ 1-9.  The Complaint contains
numerous allegations regarding the events of January 6, 2021, the actions of Metropolitan Police
Department (District of Columbia) officers, Plaintiff's criminal prosecution, and his time in
custody after his conviction and sentencing.  *Id.* ¶¶ 33-108.

As relates to the BOP, Plaintiff alleges that "[d]ue to a longstanding medical hormonal
imbalance, [he] needed medical testosterone treatments every seven days," but that the BOP was
"openly hostile and deliberately indifferent to [Plaintiff's] medical needs."  *Id.* ¶ 57.  Plaintiff
alleges that Dr. Edinger, a BOP physician at the United States Penitentiary in Lewisburg,

---

[1]    Plaintiff initially filed his complaint on September 5, 2025, (ECF No. 1), but filed a
corrected complaint a week later on September 12, 2025 (ECF No. 2-1).

[2]    If the Court the decides to transfer this case without ruling on the merits of Defendants'
motion to dismiss, Defendants respectfully request that the Court deny their motion to dismiss
without prejudice and with leave to refile the motion to dismiss when granting the motion to
transfer. *See, e.g., Mohammadi v. Scharfen*, 609 F. Supp. 2d 14, 16 (D.D.C. 2009) ("In light of the
transfer, the court does not address the defendants' motion to dismiss.").

Pennsylvania (USP Lewisburg), injected him with estrogen instead of testosterone. *Id.* at ¶ 61. Plaintiff further alleges that he was given "many estrogen injections instead of testosterone injections," *id.* at ¶ 89, and that such injections "were not the negligence typical of medical malpractice but intentional assault and battery," *id.* at ¶ 91. Plaintiff alleges that the alleged tortious actions of BOP staff have damaged Plaintiff and caused "long-lasting serious injuries, medical needs, and emotional distress." *Id.* at ¶ 96.

The Complaint contains two counts. First, Count I purports to allege tort claims under the Federal Tort Claims Act ("FTCA") for "Physical Assault, Perjury, Interference with Access to the Courts, Intimidation, Harassment, Withholding of Prescribed Medications, Excessive Force, Etc." Compl. (ECF No. 2-1) ¶¶ 109-82. The allegations in this section include claims that BOP officials violated duties of care in connection with Plaintiff's medical care, *id.* ¶¶ 131, 158, intentionally harmed Plaintiff in connection with Plaintiff's medical care, *id.* ¶ 137, made false statements in connection with his medical care, *id.* ¶ 157, and that BOP staff "staged periodic shakedowns of [his] prison cells" and "removed and destroyed [his] medical and legal files," which allegedly "violated both the FTCA and the Fifth Amendment right to property" *id.* at ¶¶ 114-15.

Count II purports to state a claim for violations of 42 U.S.C. § 1983. Compl. (ECF No. 2-1) ¶¶ 183-200. The allegations in this section focus on the actions of Metropolitan Police Officer Nathan Tate, who is not named as a defendant in this action, and who Plaintiff alleges gave false testimony during Plaintiff's trial. *Id.* ¶¶ 187-193. Plaintiff also alleges that Defendants violated his constitutional rights while he was incarcerated. *Id.* ¶¶ 183-85, 194-200.

The Complaint mentions *Bivens v Six Unknown Name Agents* several times but does not include a separate count alleging constitutional claims under *Bivens*—nor does the complaint allege that any of the named defendants engaged in tortious acts in their individual capacities. *See*

*generally*, Compl. (ECF No. 2-1).  The complaint does contain an allegation that a Metropolitan Police Officer (not a federal official) engaged in tortious acts in his individual capacity, but (as noted) he is not named as a defendant nor is he a federal agent.

The Complaint also does not contain a separate Count for Fifth Amendment violations. *See generally*, Compl. (ECF No. 2-1).

## LEGAL STANDARDS

Federal Rule of Civil Procedure ("Rule") 12(b)(1) requires dismissal of claims where the Court "lack[s] jurisdiction over the subject matter."  Fed. R. Civ. P. 12(b)(1).  "Rule 12(b)(1) presents a threshold challenge to the Court's jurisdiction . . . [and] the Court is obligated to determine whether it has subject-matter jurisdiction in the first instance." *Curran v. Holder*, 626 F. Supp. 2d 30, 32 (D.D.C. 2009) (internal citation and quotation marks omitted).  "A federal court presumptively lacks jurisdiction in a proceeding until a party demonstrates that jurisdiction exists." *Commodity Futures Trading Comm'n v. Nahas,* 738 F.2d 487, 492 n.9 (D.C. Cir. 1984) (emphasis added); *see Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("[I]t is presumed that a cause lies outside [the federal courts'] limited jurisdiction.").  "If sovereign immunity has not been waived, a claim is subject to dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction." *Clayton v. District of Columbia*, 931 F.Supp.2d 192, 200 (D.D.C. 2013) (citing *FDIC v. Meyer,* 510 U.S. 471, 475 (1994)).  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).

While the Court is required to accept as true all of the factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1), *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993), because the plaintiff has the burden of establishing the Court's jurisdiction, the "plaintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a

12(b)(6) motion for failure to state a claim." *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13–14 (D.D.C. 2001) (citation and internal quotation marks omitted). This scrutiny permits the Court to consider material outside of the pleadings in its effort to determine whether it has jurisdiction. *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 n. 3 (D.C. Cir.1997)

Under Rule 12(b)(3), the Court may dismiss a case brought in the improper venue. "In considering a Rule 12(b)(3) motion, the court accepts the plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff's favor and resolves any factual conflicts in the plaintiff's favor." *Darby v. Dep't of Energy*, 231 F. Supp. 2d 274, 276 (D.D.C. 2002). Plaintiffs, however, "bear[] the burden of establishing that venue is proper." *Varma v. Gutierrez*, 421 F. Supp. 2d 110, 113 (D.D.C. 2003).

Under Rule 12(b)(6), the Court may dismiss a Complaint where a plaintiff fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When resolving a motion to dismiss pursuant to Rule 12(b)(6), the pleadings are construed broadly so that all facts pleaded therein are accepted as true, and all inferences are viewed in a light most favorable to the plaintiff. *See Iqbal*, 556 U.S. at 678. However, a court is not required to accept conclusory allegations or unwarranted factual deductions as true. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Likewise, a court need not "accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

Ultimately, the focus is on the language in the complaint and whether that sets forth sufficient factual allegations to support a plaintiff's claims for relief.

## ARGUMENT

I.  **The United States Is Not Responsible For The Acts Or Omissions Of The District of Columbia Metropolitan Police Department Nor Metropolitan Police Officer Tate**

The Complaint makes numerous allegations regarding the Metropolitan Police Department ("MPD") and a specific MPD officer, Nathan Tate, but has not named either as defendants to this action.  *See* Compl. (ECF No. 2-1) at Caption (listing parties in accordance with Federal Rule of Civil Procedure 10(a)); *see also id.* ¶¶ 12-15, 22-32.  As a result, neither may be considered a defendant despite specific allegations made in the complaint.[3]

Federal Rule of Civil Procedure ("Rule") 10(a) requires the title of the complaint to name all parties.  Fed. R. Civ. P. 10(a).  By failing to include any individuals or entities other than the United States, the Attorney General, and the Director of the Bureau of Prisons in the caption of the Complaint, Plaintiff has failed to include them as defendants in this action.  Moreover, summonses were only issued for the United States, the Attorney General, and the Director of the Bureau of Prisons, ECF No. 5, and Plaintiff has only filed returns of service indicating that the United States and the Attorney General were served, Return of Process (ECF No. 6).

The United States is not responsible for the actions of the Metropolitan Police Department and its officers, *see* Compl. (ECF No. 2-1) ¶¶ 22-32, as the MPD is governed by the District of Columbia government and is subject to the District of Columbia Official Code §2-531 *et seq.*

---

[3]     Undersigned counsel is counsel for the United States—not any individual or agency of the District of Columbia.  However, in light of Plaintiff's misguided attempt to argue that the United States is responsible for the actions of MPD and its officers, Defendants address Plaintiff's failure to include them as defendants.

https://en.wikipedia.org/wiki/Metropolitan_Police_Department_of_the_District_of_Columbia

Plaintiff can point to no statute or other legal authority that makes the United States responsible for the actions of MPD or its officers.

## II.    **The United States Has Not Waived Sovereign Immunity for Plaintiff's Claims**

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). "The doctrine of sovereign immunity provides that the Federal Government can be sued only insofar as it has agreed to be sued." *Stoddard v. Wynn*, 68 F. Supp. 3d 104, 112 (D.D.C. 2014) (citing *FDIC*, 510 U.S. at 475). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC*, 510 U.S. at 475. "Sovereign immunity also bars suit for money damages against federal officials in their official capacities absent a specific waiver by the Federal Government." *Stoddard*, 68 F. Supp. 3d at 112 (citing *Clark v. Library of Cong.*, 750 F.2d 89, 102–04 (D.C. Cir. 1984)).

Sovereign immunity bars damages actions against the United States for violations of constitutional rights unless there is an explicit waiver. *See Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 410 (1971). The Federal Tort Claims Act (FTCA) does not waive the federal government's immunity from suit for constitutional torts that may be committed by its employees. 28 U.S.C. §§ 2679(b)(1) and (b)(2); *Kline v. Republic of El Salvador*, 603 F. Supp. 1313, 1317 (D.D.C. 1985).

Moreover, "[s]overeign immunity also bars suit for money damages against federal officials in their official capacities absent a specific waiver by the Federal Government." *Id.* (citing *Clark v. Libr. of Cong.*, 750 F.2d 89, 102–04 (D.C. Cir. 1984)); *see also Hazel v. Lappin*, 614 F. Supp. 2d 66, 69–70 (D.D.C. 2009) (citing *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985)).

This is because a suit against a government official in his official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent," such that "an official capacity suit is, in all respects other than name . . . a suit against the entity." *Graham*, 473 U.S. at 165–66; *see also Kim v. United States*, 632 F.3d 713, 715 (D.C. Cir. 2011) (holding that "no *Bivens* claim is available against [IRS employees] in their official capacities"); *Perkins v. Ashcroft*, 275 Fed. App'x 17 (D.C. Cir. 2008) ("to the extent appellant was attempting to sue the former Attorney General in his official capacity, the action is barred by sovereign immunity"). Thus, Plaintiff's claims against the Attorney General and Former BOP Director in their official capacities are, under law, claims asserted against the United States and must be dismissed. *See Atchison v. District of Columbia*, 73 F.3d 418, 424 (D.C. Cir. 1996) (government officials are not personally liable for damages when sued in their official capacities; a damages action is equivalent to one against the government itself).

In this case, there has been no waiver of sovereign immunity as it pertains to Plaintiff's claims against the government and Defendants in their official capacities. There can be no *Bivens* claims against the Federal Defendants in their official capacity because "it is well settled that Congress has not waived immunity for suits seeking monetary damages that arise under the Constitution." *Scinto v. Fed. Bureau of Prisons*, 608 F. Supp. 2d 4, 9 (D.D.C. 2009) (dismissing *Bivens* action against federal agency for lack of jurisdiction on the basis of sovereign immunity) (internal citations omitted); *see also Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. at 478 (United States has not waived sovereign immunity for money damages sounding in constitutional tort). *Scinto v. BOP*, 352 Fed. Appx. 448,449 (D.C. Cir. 2009) (affirming dismissal on sovereign immunity grounds of claims for money damages against the BOP and its employees in their official

capacities); *Jackson v. BOP*, 657 F. Supp. 2d 176, 179 (D. D.C. 2009)("[T]he BOP enjoys sovereign immunity from a suit for damages for constitutional violations.").

The Complaint specifically alleges that Pam Bondi is being sued in her capacity as the Attorney General, Compl. (ECF No. 2-1) ¶¶ 15, 32, and, while the Complaint does not specifically address the capacity in which Collette Peters is being sued, it does address her official role as BOP Director and does not make specific allegations about actions taken in her individual capacity, *id.* ¶¶ 14, 31.[4]   Thus, any constitutional claim against the government or official capacity *Bivens* claims for monetary damages must be dismissed for lack of subject matter jurisdiction.

### A.     The Court Lacks Subject Matter Jurisdiction for Any Claim Under Section 1983

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins,* 487 U.S. 42, 48 (1988). Section 1983 does not "authorize suits challenging actions taken under color of federal law," or "waive the United States' sovereign immunity."  *Dye v. United States*, 516 F. Supp. 2d 61, 71 (D.D.C. 2007); *see also Miango v. Dem. Rep. Congo*, 243 F. Supp. 3d 113, 134 (D.D.C. 2017) ("[S]ection 1983 does not create a cause of action against a federal actor[.]").  And "[s]overeign immunity may not be waived by federal agencies."  *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1105 (D.C. Cir. 2005). *Cooper v. Johnson*, 652 F. Supp. 2d 33, 37-38 (D.D.C. 2009) ("the Court concludes that the plaintiff's complaint fails to state a § 1983 claim against [the federal agency] because the pleading does not identify [a federal actor] acting under color of District of Columbia law.").

---

[4]     Undersigned counsel also represents Defendant Peters in her personal capacity.

The Defendants—the United States, the Attorney General, and the Director of the Bureau of Prisons—are all part of the federal government. Accordingly, Section 1983 does not provide a waiver of sovereign immunity for Plaintiff to bring these claims against Defendants and therefore, Count II of the Complaint (Compl. (ECF No. 2-1) ¶¶ 183-200) must be dismissed for lack of jurisdiction.

### B.    The Court Lacks Jurisdiction Over Plaintiff's Claims Under the Federal Tort Claims Act

"When a plaintiff seeks monetary damages against a federal agency for certain torts committed by federal employees, the only possible basis for court jurisdiction would be the" FTCA.  *Epps v. U.S. Att'y Gen.*, 575 F. Supp. 2d 232, 238 (D.D.C. 2008).

### 1.    The United States Is The Only Proper Defendant Under The FTCA

The only proper defendant in an action brought under the FTCA is the United States. *See Davis v. United States*, 196 F.Supp.3d 106, 110 n.2 (D.D.C. 2016) ("[T]he United States is the only proper defendant in an action under the FTCA."); *Johnson v. Veterans Affairs Med. Ctr.*, 133 F. Supp. 3d 10, 16 (D.D.C. 2015) ("FTCA suits 'must name the United States as defendant.'" (quoting *Goddard v. D.C. Redevelopment Land Agency*, 287 F.2d 343, 345–46 (D.C. Cir. 1961))); *Daisley v. Riggs Bank, N.A.*, 372 F. Supp. 2d 61, 81 (D.D.C. 2005) ("[T]he proper defendant is the United States, not Treasury."). Even if a federal agency may sue and be sued in its own name, the FTCA bars direct claims against federal agencies. *See* 28 U.S.C. § 2679(a); *see also Cox v. Sec'y of Labor*, 739 F. Supp. 28, 29 (D.D.C. 1990) ("The FTCA directs that the exclusive remedy for tort claims is an action against the United States rather than against the individuals or the particular government agencies."); *see also Verizon Washington, D.C., Inc. v. United States*, 254 F. Supp. 3d 208, 215 (D.D.C. 2017) (dismissing FTCA claims against the General Services Administration for lack of subject matter jurisdiction).

- 9 -

Here, in addition to the United States, Plaintiff names as defendants the Attorney General and the Director of the Bureau of Prisons.  Compl. (ECF No. 2-1) ¶¶ 30-32.  The Complaint explicitly states that the Attorney General "is sued in her capacity as the Attorney General" and, while it adds that she is being sued "for actions taken under color of federal authority by her predecessor," *Id.*  ¶ 32, a suit brought pursuant to the FTCA is one solely against the United States. The Complaint also states that the Director of the Bureau of Prisons "is responsible for the operations, management, and actions of the nation's federal prisons, including the frequent occasions when the BOP uses State prisons under contract." *Id.*  ¶ 31.  Thus, Defendants interpret the claims against the Attorney General and the Director of the Bureau of Prisons as being against BOP and the Department of Justice, respectively.

However, the FTCA permits claims only against the United States, *see* 28 U.S.C. § 1346(b)(1), and bars claims brought directly against federal agencies, *see* 28 U.S.C. § 2679(a). Longstanding precedent instructs that Plaintiff may not bring claims pursuant to the FTCA directly against the Department of Justice and BOP through their chief executives, and therefore, the FTCA claim should be dismissed as to the Attorney General and the Director of the Bureau of Prisons on that basis. *See, e.g.*, *Davis*, 196 F. Supp. 3d at 110 n.2; *Johnson*, 133 F. Supp. 3d at 16; *Daisley*, 372 F. Supp. 2d at 81; *Cox*, 739 F. Supp. at 29.

### 2.    Plaintiff Has Failed to Exhaust Administrative Remedies Regarding Many Of His Allegations

"In order to pursue claims under the FTCA, . . . a plaintiff must first exhaust his administrative remedies [for all of his claims], and this exhaustion requirement is jurisdictional." *Detar v. United States*, 174 F. Supp. 3d 566, 569 (D.D.C. 2016); *see also Hammond v. Fed. Bureau of Prisons*, 740 F. Supp. 2d 105, 111 (D.D.C. 2010) (dismissing FTCA claim for lack of subject

matter jurisdiction where plaintiff had not "established by a preponderance of the evidence that he administratively exhausted his FTCA claim with the BOP before commencing this action").

The procedure to exhaust administrative remedies is specific:  a plaintiff must present the agency with both (1) a written statement sufficiently describing the injury and facts to enable the agency to begin its own investigation, and (2) a sum-certain damages claim.  *Tookes v. United States*, 811 F. Supp. 2d 322, 331 (D.D.C. 2011) (citing *GAF Corp. v. United States*, 818 F.2d 901, 905 (D.C. Cir. 1987)); 28 C.F.R. § 14.12(a) (stating that an FTCA claim shall be deemed "presented" when a federal agency receives an SF–95 "or other written notification of an incident, accompanied by a claim for money damages in sum certain."); 28 U.S.C. § 2675(a) ("[A]n action shall not be instituted against the United States" for damages caused by the negligent or wrongful act of any employee of the government "unless the claimant shall have first presented the claim to the appropriate Federal agency.").  Before a claimant may file a case in federal court, the agency must have either denied the claim in writing or failed to provide a final disposition within six months of the filing of the claim.  *McNeil v. United States*, 508 U.S. 106, 111 (1993); *Edwards v. District of Columbia*, 616 F.Supp.2d 112, 117 (D.D.C. 2009).

All claims a plaintiff seeks to pursue in federal court must have been presented in a claim to the agency.  In other words, an individual cannot exhaust certain claims at the administrative level and then add on to his claims in a federal civil complaint.  *See Murphy v. United States,* 121 F. Supp. 2d 21, 27 (D.D.C.2000), *aff'd,* 64 F. App'x 250 (D.C. Cir. 2003) (dismissing "false light" claim due to failure to exhaust because the agent's administrative complaint did not provide notice of such a claim and was based on underlying facts that were different than those  underlying claim for assault and negligence); *Bembenista v. United States,* 866 F.2d 493, 499 (D.C.Cir.1989) (finding that plaintiffs failed to exhaust medical malpractice claim, as their administrative claim

alleged assault; attachment of medical records to administrative claim did not provide sufficient notice of malpractice claim); *Edmonds v. United States*, 436 F. Supp. 2d 28, 33-34 (D.D.C. 2006) (dismissing claims regarding "negligent investigation" allegedly occurring during plaintiff's employment on grounds that they were not included in and thereby not exhausted by the administrative complaint).

Plaintiff did present Standard Forms 95 to BOP.  Exs. 1-4.  But the only claim that Plaintiff addresses in the administrative complaint, TRT-NER-2024-08359, includes allegations that Plaintiff was erroneously given estrogen by a BOP physician, instead of the testosterone that he had been prescribed.  Ex. 1; Compl. (ECF No. 2-1) ¶ 10.  The only other tort-adjacent allegation in TRT-NER-2024-08359 is that one of the physicians made a false statement about Plaintiff to a shift supervisor.  Ex. 1.  Though the Complaint does not allege that Plaintiff submitted any other administrative claims—and it is Plaintiff's burden to plead jurisdictional administrative exhaustion—BOP does have records of three additional claims.

Plaintiff submitted claim TRT-NER-2024-08357, which includes claims that Plaintiff was erroneously given estrogen by a BOP physician and that he was assaulted (presumably by a fellow inmate) because of the physical effects of the estrogen.  Exs. 2, 3.  Plaintiff submitted claim TRT-NER-2024-08358, which includes claims that Plaintiff's hand was injured when he was assaulted (presumably by a fellow inmate) and that BOP did not provide proper corrective care.  Ex. 4.  BOP also has a record that Plaintiff submitted a claim for small claims property damage.  Ex. 5.  This claim was not presented on a form SF-95.  Ex. 5.

A generous reading of the materials Plaintiff submitted to BOP in connection with his administrative claims is that he exhausted claims for assault and battery in connection with his medical treatment, negligence in connection with his medical care and conversion.  *See generally*

Exs. 1-5.  These materials cannot be said to exhaust claims for malicious prosecution, abuse of process, or any other tort connected with his treatment by federal officials or aspects of his incarceration other than his medical care.  Moreover, Plaintiff has not demonstrated that he attempted to exhaust administrative remedies with the Department of Justice for any torts he believes to have been committed in connection with his arrest and prosecution.  *See generally*, Compl. (ECF No. 2-1).  As discussed above, neither the District of Columbia nor the Metropolitan Police Department are agents of the United States or defendants to this action. Because Plaintiff did not exhaust administrative remedies in connection with claims related to malicious prosecution, abuse of process, or any other tort connected with his treatment by federal officials in connection with his arrest for activities on January 6, 2021, prosecution therefore, or aspects of his incarceration other than his medical care, any claims based on these torts must also be dismissed for lack of jurisdiction.

### III.    Plaintiff Has Not Stated A *Bivens* Claim

As discussed, the Complaint does not include a stand-alone *Bivens* claim and, instead, appears to suggest that the section 1983 claim should be read as a *Bivens* claim with respect to the defendants who are federal actors.  Plaintiff, who is represented by counsel, should not be afforded so liberal a reading of the Complaint that interprets it as attempting to state a *Bivens* claim. *Cf. Washington v. Geren*, 675 F. Supp. 2d 26, 31 (D.D.C. 2009) ("A pro se complaint is entitled to liberal construction."); *Spence v. VA et al.*, 109 F. 4th 531, 538 (D.C. Cir. 2024) (The pleading leniency afforded *pro se* litigants does not apply when the litigant is a licensed attorney).  Even if the Court is inclined to a more liberal construction of the Complaint, it still fails to state a *Bivens* claim against any Defendant.

Even so, the Supreme Court has recognized a *Bivens* claim in only three circumstances. *Egbert v. Boule*, 142 S. Ct. 1793, 1802 (2022). First, for injuries by federal officers who violated the Fourth Amendment by using excessive force while arresting a suspect from his home under federal domestic drug laws. *Id.* (citing *Bivens*, 403 U.S. at 389). Second, under the Fifth Amendment for gender discrimination against a congressional staffer when no anti-discrimination statute applied to the workplace at issue. *Id.* (citing *Davis v. Passman*, 442 U.S. 228 (1979)). And finally under the Eighth Amendment for inadequate medical care to a federal prisoner that resulted in his death. *Id.* (citing *Carlson v. Green*, 446 U.S. 14 (1980)).

Today, "recognizing a cause of action under *Bivens* is a disfavored judicial activity." *Egbert*, 142 S. Ct. at 1803. In considering a proposed *Bivens* claim, a court's inquiry proceeds in two stages. *Id.* The court first asks: "whether the case presents a new *Bivens* context—i.e., is it meaningfully different from the three cases in which the Court has implied a damages action." *Id.* (cleaned up). And second, "a *Bivens* remedy is unavailable if there are special factors indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." *Id.* (internal quotation marks omitted). One such "special factor" is that "Congress already has provided, or has authorized the Executive to provide, an alternative remedial structure." *Id.* at 1804 (cleaned up). Indeed, "[i]f there are alternative remedial structures in place, that alone, like any special factor, is reason enough to limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id.* (internal quotation marks omitted).

These two "steps often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert*, 142 S. Ct. at 1803. "When asked to imply a *Bivens* action, [the] watchword is caution." *Id.* (internal quotation marks omitted). "If there is even a single reason to pause before applying *Bivens* in a new context, a court

may not recognize a *Bivens* remedy." *Id.* (internal quotation marks omitted); *accord id.* ("Even a single sound reason to defer to Congress is enough to require a court to refrain from creating such a remedy" (cleaned up)). This is a difficult standard to meet, by design—"in most every case," the Court has stressed, there will be "a rational reason to think" that Congress rather than the courts "should decide whether to provide for a damages remedy," and so, "no *Bivens* action may lie." *Id.*

Here, whether this court examines one prong or two, there is no question that Plaintiff's First, Fourth, Fifth, Fourteenth Amendment Claims present a new *Bivens* context—i.e., those claims are meaningfully different from the three cases in which the Court has implied a damages action. *Egbert*, 142 S. Ct. at 1803. Moreover, medical care claims against the United States and its officers in their official capacities under the Eighth Amendment, cannot be litigated by way of an individual-capacity *Bivens* type action.

A.    **Plaintiff Has Not Sued Any Defendant In Their Individual Capacity**

The Complaint does not contain any individual capacity claims against any federal officer. The Complaint specifically alleges that Pam Bondi is being sued in her capacity as the Attorney General, Compl. (ECF No. 2-1) ¶¶ 15, 32, and, while the Complaint does not specifically address the capacity in which Collette Peters is being sued, it does address her official role as BOP Director and does not make specific allegations about actions taken in her individual capacity, *id.* ¶¶ 14, 31. Moreover, even if the Complaint is given the most possible liberal construction and one infers that Plaintiff intended to make *Bivens* allegations against Defendant Peters, he did not serve her in her individual capacity.  A federal employee sued in his individual capacity must be served in accordance with Federal Rule of Civil Procedure 4.  "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant."  *Mann v. Castiel*, 681 F.3d 368, 372 (D.C. Cir. 2012).  "Where damages are sought

through a *Bivens* claim, personal service . . . is necessary to obtain jurisdiction over a defendant in his capacity as an individual." *Pollack v. Meese*, 737 F. Supp. 663, 666 (D.D.C. 1990).  After filing a lawsuit in federal court, a plaintiff has 90 days to properly effect service.  Fed.R.Civ.P. 4(m).  Rule 4 allows a plaintiff to follow state law for service of an individual or allows a plaintiff to deliver a copy of the summons and complaint to the individual personally, leave a copy of the summons and complaint at an individual's dwelling with someone of suitable age and discretion who resides there, or deliver a copy of the summons and complaint to an agent authorized by appointment or law to receive service of process.  Fed. R. Civ. P. 4(e)(1)-(2).

There is no evidence that Plaintiff has served Defendant Peters, *see* Return of Process (ECF No. 6), and, if necessary, BOP can provide a declaration stating that it has no record of her being served through its Office of General Counsel.  As such, this Court does not have personal jurisdiction over Defendant Peters for a personal suit.  *See Jara v. Smith*, Case No. 23-CV-1359 (APM), 2024 WL 4024645 (D.D.C. Sept. 4, 2024).

**B.**     **Plaintiff's claims present a new *Bivens* context.**

In *Ziglar*, the Supreme Court announced the proper test for determining whether a case presents a new context.  *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1859 (2017).  Courts must compare the context of the case at issue with the three prior Supreme Court (and not prior District Court or Circuit Court decisions) recognizing a *Bivens* remedy.  *Id.*

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional rights at issue; the generality or specificity of the official action; the extent of the judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of the other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 1860.  The Supreme Court further explained that, given its "expressed caution about extending the *Bivens* remedy, the new-context inquiry is easily satisfied" and even "small" differences between a case and a prior Supreme Court case recognizing a *Bivens* remedy are sufficient to create a new context.  Recently, in reversing the Fourth Circuit's attempt to extend a *Bivens* remedy to an inmate's excessive-force claim, the Supreme Court explained, "[t]hose many post-1980 *Bivens* 'cases have made clear that, in all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts.'" *Goldey v. Fields*, 606 U.S. 942, 942–43 (2025) citing  *Egbert*, 142 S. Ct. at 1793.

Plaintiff's constitutional claims present new contexts, as they diverge factually from the Supreme Court's three prior *Bivens* cases and because they raise potential special factors that the Supreme Court has not considered in the past.  While the Supreme Court recognized an Eighth Amendment claim in *Carlson*, the claim was one for deliberate indifference for failing to treat an inmate's emergent and fatal medical condition – asthma – whereas, Plaintiff's purported constitutional claims in this matter involve allegations that Health Services staff provided him with improper medical care and vague, general allegations of denial of access to the courts because of legal and medical documents removed from a cell by unnamed staff members.

At best, like the claims in *Egbert*, the similarities between Plaintiff's claims and previous *Bivens* type claims permitted in *Carlson* cases are superficial.  In *Egbert*, the plaintiff's Fourth Amendment excessive force claim was based on allegations that a Border Patrol agent entered the plaintiff's property, threw him against a car, and then subsequently threw him to the ground. *Egbert*, 142 S.Ct. at 1801.  The plaintiff also brought a First Amendment retaliation claim based on actions that the agent allegedly took after the plaintiff filed an administrative grievance and tort claim.  *Id.* at 1800.

With respect to the Fourth Amendment claim, the Supreme Court recognized that *Bivens* also involved a Fourth Amendment claim based on "similar allegations of excessive force," and that the facts "thus arguably present *almost parallel circumstances* [to *Bivens*] or a similar mechanism of injury." *Id*. at 1805 (emphasis added) (cleaned up). Nevertheless, the Supreme Court characterized these similarities as "superficial" and not enough to support the judicial creation of a cause of action. *Id*.

With respect to the First Amendment retaliation claim, the plaintiff asserted that *Davis* had extended *Bivens* "under allegedly similar circumstances" because the claim in *Davis* also "required the factfinder to probe a federal official's motives for taking an adverse action against the plaintiff." *Id*. at 1808. But the Supreme Court rejected this purported similarity as well, holding that "a plaintiff cannot justify a *Bivens* extension based on parallel circumstances with *Bivens, Passman*, or *Carlson* unless he also satisfies the analytical framework prescribed by the last four decades of intervening case law." *Id*. at 1809 (cleaned up).

The Supreme Court's rejection of these similarities as "superficial" is instructive in the present matter. Plaintiff has failed to present any parallel circumstances with *Bivens*, *Passman* or *Carlson* as to his First, Fourth, Fifth and Fourteenth Amendment claims. The Eighth Amendment generally prohibits the imposition of cruel and unusual punishment of a prisoner, and the claim allowed under *Carlson* fell under the Eighth Amendment. However, in *Egbert*, the Supreme Court found this type of similarity unpersuasive. If the similarities between the Fourth Amendment excessive force claims in *Egbert* and *Bivens* are no more than "superficial," then any similarities between the claim that prison officials failed to provide emergent medical care in *Carlson* and the claims Plaintiff makes now relating to the BOP's scheduling and allocation of resources to provide his day-to-day medical care are also superficial. And especially so here when the allegations are

against the Director of the BOP without any factual allegations that she had any personal involvement in the provision of Plaintiff's medical care.  This case is a far cry from the facts of *Carlson*.  Further, there is no Supreme Court precedent that could support a *Bivens* claim against a BOP Director for staff members at a prison allegedly improperly searching a cell.

### C.    Alternative Remedy Structures Are In Place, Precluding An Implied Bivens Remedy

Recognizing the remedy Plaintiff seeks in the present matter would disregard the "alternative remedies available" that should prompt this Court "to think Congress might doubt the efficacy or necessity of a damages remedy in a suit like this one." *Ziglar*, 137 S. Ct. at 1865 (internal quotation marks omitted).  "If there are alternative remedial structures in place, 'that alone,' like any special factor, is reason enough to 'limit the power of the Judiciary to infer a new *Bivens* cause of action.'" *Egbert*, 142 S.Ct. at 1804.  Plaintiff can pursue remedies through the FTCA, which is "the exclusive remedy for most claims against Government employees arising out of their official conduct." *Hui v. Castaneda*, 559 U. S. 799, 806 (2010).  The Supreme Court has said that the availability of state tort law can provide an "alternative means for relief" counselling against judicial implication of a damages remedy, *Ziglar*, 137 S. Ct. at 1858 (citing *Malesko*, 534 U.S., at 73–74, and *Minneci v. Pollard*, 565 U.S. 118, 127–30 (2012)).  Thus, after *Ziglar*, courts across the country have found the availability of potential FTCA relief to be among the factors that can militate against extending *Bivens* in a variety of contexts.  *See Oliva v. Nivar*, 973 F.3d 438, 444 (5th Cir. 2020); *Edwards v. Gizzi*, No. 20-cv-7371, 2022 WL 309393, at *9 (S.D.N.Y. Feb. 2, 2022) (collecting cases where courts found that the FTCA was an alternative remedy that counsels against extending *Bivens*); *Ohome v. United States*, No. 21-cv-368, 2021 WL 5771147, at *7 (N.D. Ga. Dec. 6, 2021) (declining a *Bivens* remedy for an airport traveler's excessive force claim against a customs officer who tackled him onto a baggage carousel in part because "[a]lthough the FTCA

is not a substitute for a *Bivens* action, it is still an effective and available remedy to be considered with other special factors"); *K.O. by & through E.O. v. Sessions*, 2022 WL 3008025, at *1 (D.C. Cir. Jul. 29, 2022) (stating that the alternative remedy under the FTCA should have been an additional reason to deny a *Bivens* action, and urging that the Supreme Court overrule *Bivens* as an "egregious example of the Supreme Court of the United States acting like a common law court rather than an Article III court"). *see also Spagnola v. Mathis*, 859 F.2d 223, 228, 273 U.S. App. D.C. 247 (D.C. Cir. 1988) (explaining that "courts must withhold their power to fashion damages remedies when Congress has put in place a comprehensive system to administer public rights, has 'not inadvertently' omitted damages remedies for certain claimants, and has not plainly expressed an intention that the courts preserve *Bivens* remedies"). *Liff v. Office of Inspector Genr'l.,* 881 F.3d 912, 917 (D.C. Cir. 2018). Accordingly, the FTCA is among the many reasons here to decline extending *Bivens*.

BOP also maintains an administrative remedy program that allows inmates and former inmates, such as Plaintiff, to file grievances "relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10.  In response to such grievances, BOP must provide written responses in particular timeframes, and inmates may appeal institution-level responses to BOP's regional and central offices.   28 C.F.R. § 542.10-19.   The Supreme Court has recognized the BOP's administrative remedy program as an alternative remedy.  *Goldey v. Fields*, 606 U.S. 942, 944-45 (2025); *Egbert*, 142 S.Ct. at 1806 (*citing Malesko*, 534 U.S. at 74).

Moreover, the current matter implicates the field of prison administration and, therefore, relates to a matter that is "rarely [the] proper subject[] for judicial intervention."  *Id.* at 1805.  The Supreme Court has long recognized that "federal courts have adopted a broad hands-off attitude toward problems of prison administration," *Procunier v. Martinez*, 416 U.S. 396, 404 (1974),

because "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." *Turner*, 482 U.S. at 84–85; *see also Bell v. Wolfish*, 441 U.S. 520, 548 (1979) ("[P]rison administrators may be 'experts' only by Act of Congress . . . But judicial deference is accorded not merely because the administrator ordinarily will, as a matter of fact in a particular case, have a better grasp of his domain than the reviewing judge, but also because the operation of our correctional facilities is peculiarly the province of the Legislative and Executive Branches of our Government, not the Judicial."). This "hands-off attitude" is especially appropriate in the federal prison context presented here.

Further, the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e, which sought to "bring . . . under control" the "sharp rise in prisoner litigation in the federal courts," *Woodford v. Ngo*, 548 U.S. 81, 84 (2006), counsels against the creation of a cause of action. The Supreme Court observed of the PLRA that Congress "clear[ly] . . . had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs," but "the Act itself does not provide for a standalone damages remedy against federal jailers," which could "suggest[] Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment." *Ziglar*, 137 S. Ct. at 1865.[5] As *Goldey* recognized, "Congress has actively legislated in the area of prisoner litigation but has not enacted a statutory cause of action for money damages. *Goldey*, 145 S. Ct. at 2615. As *Egbert* teaches, courts are

---

[5]     In 2003, Congress returned to the arena of inmate abuse with the Prison Rape Elimination Act, to "protect the Eighth Amendment rights of . . . prisoners" and "increase the accountability of prison officials." 34 U.S.C. § 30302. Again, Congress did not create a damages remedy against federal prison staff, opting instead to authorize the Attorney General to issue regulations to prevent, investigate, and punish rape in prisons. *Id.* § 30307(a)(1)-(3).

"[n]ow . . . [to] defer to 'congressional inaction' if 'the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms.'" *Egbert*, 142 S.Ct. at 1808 (*quoting Schweiker v. Chilicky*, 487 U.S. 412, 423 (1988)). Plaintiff's claims in this action relate to ongoing inmate medical care and the searching of prison cells. Precedent makes clear that Congress has determined that these types of prison decisions are the expertise of BOP, not the courts.

To authorize a *Bivens* remedy against a BOP Director over questions of subordinate staff members making day-to-day decisions relating to medical care or cell searches specifically runs the very real risk of "judicial intrusion" into the field of prison administration that could produce harmful and inappropriate consequences. *See Egbert*, 142 S.Ct. at 1805. This would be especially problematic here in light of the "wide-ranging deference" given to prison employees in responding to day-to-day events. *Bell*, 441 U.S. at 547. A *Bivens* remedy against a BOP Director without any personal involvement with the plaintiff would be at odds with the "substantial deference" courts "must accord" to the "professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).

The BOP is presently responsible for the custody and care of 153,647 federal inmates and has 33,947 employees. *See* BOP, *About Our Agency*, https://www.bop.gov/about/agency/ (last visited January 13, 2026).[6] Any inmate-plaintiff could survive a motion to dismiss an individual-capacity damages claim against a BOP Director by merely making conclusory allegations that the

---

[6]    Information on government websites is not subject to reasonable disputes and is appropriate for judicial notice. *See* Fed. R. Evid. 201(b)(2); s*ee, e.g.*, *United States v. Akinrosotu*, 637 F.3d 165, 168 (2d Cir. 2011) (taking judicial notice of the official BOP website).

Director violated his constitutional rights.  Permitting a *Bivens* action premised on such allegations would have unpredictable "systemwide consequences."  *See Egbert*, 142 S.Ct. at 1803. "That uncertainty alone is a special factor that forecloses relief" in this case.  *Id.*  Moreover, it could result in "a significant expansion of Government liability, [which] counsels against permitting *Bivens* relief."  *Id.* at 1808 (internal quotation marks and citation omitted).

Finally, like in *Egbert*, recognizing a *Bivens* remedy for Plaintiff's claims "pose[s] an acute risk" of increasing "substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.'" *Id.* at 1807 (*quoting Anderson v. Creighton*, 483 U.S. 635, 638 (1987)).  BOP Directors ought not have to operate from a position of fear of personal liability every time an inmate claims something went wrong at one of BOP's facilities.  "[C]reating a cause of action is a legislative endeavor," and one this Court should not undertake given the field and context that give rise to Plaintiff's claims. *Id.* at 1802.  A dismissal of Plaintiff's Complaint would serve as a dual recognition of the "separation of powers concerns [that] counsel a policy of judicial restraint" in the field of federal prison administration, *Turner*, 482 U.S. at 85.

### D.    Plaintiff Fails to State a Claim Against Defendants Peters and Bondi

*Bivens* does not hold supervisors vicariously liable absent their personal involvement. *See Iqbal*, 556 U.S. at 676, 129 S.Ct. 1937 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. Because vicarious liability is inapplicable to *Bivens*, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." (citations omitted)); *see also Pinson v. Dep't of Just.*, 246 F. Supp. 3d 211, 222 (D.D.C. 2017). "High-level officials . . . typically are not subject to Bivens liability since they do not routinely participate

personally in decisions about a particular individual at a particular location." *Morris v. U.S. Sentencing Comm'n*, 62 F. Supp. 3d 67, 75 (D.D.C. 2014), *aff'd*, 696 F. App'x 515, 516 (D.C. Cir. 2017) (affirming dismissal of personal and official capacity claims against Attorney General, as he "played no role whatsoever in the actions Morris alleged injured him").

It is well settled that *respondeat superior* liability is not available in a *Bivens* action. *Iqbal*, 556 U.S. at 676 (holding there is no such thing as *respondeat superior* liability on a *Bivens* claim; defendants are only personally liable for personal conduct that violates the Constitution). Courts have consistently rejected *respondeat superior* as a basis for the imposition of *Bivens* liability and have required plaintiffs to allege the personal involvement of each defendant in the events that gave rise to the plaintiff's claims. *See, e.g.*, *Risley v. Hawk*, 108 F.3d 1396, 1396-97 (D.C. Cir. 1997) (affirming the dismissal of an Eighth Amendment claim where there was lack of personal involvement and "claims against [the defendants] are nothing more than an allegation of respondeat superior, which is not cognizable in a *Bivens* action"); *Cameron v. Thornburgh*, 983 F.2d 253, 258 (D.C. Cir. 1993) (dismissing the Attorney General and the Bureau of Prisons Director from suit because the complaint failed to allege their personal involvement and was based solely on the bare assumption that policy decisions in the District of Columbia influenced the prisoner's treatment in a federal prison in Indiana); *Johnson v. United States*, 642 F. Supp. 2d 1, 5 (D.D.C. 2009) (dismissing *Bivens* claim against the Bureau of Prisons Director because plaintiff did not allege personal involvement by the Director); *Arnold v. Moore*, 980 F. Supp. 28, 35-36 (D.D.C. 1997) (dismissing the Director of D.C. Department of Corrections and the Warden of D.C. Detention Facility as defendants to the extent they were sued on the basis of *respondeat superior*); *Meyer v. Reno*, 911 F. Supp. 11, 15 (D.D.C. 1996) (dismissing Attorney General and the Bureau of Prisons Director from suit absent any allegations that they personally participated in the events

that gave rise to the plaintiff's claims, or any corroborative allegations to support the inference that these defendants had notice of or acquiesced in the improper securing of detainers against the plaintiff by their subordinates); *Burke v. Lappin*, 821 F. Supp. 2d 244, 247-48 (D.D.C. 2011) (granting defendants motion to dismiss and dismissing claims against high-level Bureau officials as it related to conditions of plaintiff's confinement). Moreover, a defendant's "supervisory role . . . does not render [him or her] personally liable for the alleged wrongful acts of the BOP's employees." *Johnson*, 642 F. Supp. 2d at 5.

Here, even construing the facts in the light most favorable to Plaintiff as the Court must at this stage, he fails to plead *any* factual allegations sufficient to state constitutional violations committed personally by Director Peters, and Attorney General Bondi. The operative complaint generally names the Defendants, but is noticeably silent as to what specific action, if any, either Director Peters or Attorney General Bondi taken. Indeed, there is no evidence that any of these individuals, who are senior officials within the Government, were involved in or took any action with respect to Plaintiff. Absent such a showing, Plaintiff's theory of a *Bivens* violation premised on *respondeat superior* liability fails. Therefore, any constitutional claims against Defendants Peters and Bondi in their individual capacities should be dismissed.

### E. Defendants Peters is entitled to qualified immunity.

"Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 138 S.Ct. 1148, 1152 (2018) (*per curiam*). "Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015). It protects from trial and the discovery that accompanies civil litigation and is thus "an immunity from suit rather than a mere defense to liability." *Mitchell v.*

*Forsyth*, 472 U.S. 511, 526 (1985); *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001); *Siegert v. Gilley*, 500 U.S. 226, 232 (1991).  "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

Courts reviewing qualified immunity must undertake a two-prong analysis – determining if the plaintiff has alleged a violation of a constitutional right and if that right was "clearly established" at the time of the alleged misconduct.  *Pearson v. Callahan*, 555 U.S. 223, 232, 235 (2009).  As noted above, Plaintiff has not alleged facts showing that Defendant Peters violated his constitutional rights.  As such, Defendant Peters is entitled to Qualified Immunity.

## IV.    Plaintiff's Complaint Should Be Transferred to the Middle District of Pennsylvania

This civil action does not belong in this judicial district.  A lawsuit naming as a defendant an officer or employee of the United States or any agency thereof "may, except as otherwise provided by law, be brought in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action."  28 U.S.C. § 1391(e).  When "the only real connection [the] lawsuit has to the District of Columbia is that a federal agency headquartered here is charged with generally regulating and overseeing the [administrative] process, venue is not appropriate in the District of Columbia." *Aftab v. Gonzalez*, 597 F. Supp. 2d 76, 81 (D.D.C. 2009) (citing *Al-Ahmed v. Chertoff*, 564 F. Supp. 2d 16, 19 (D.D.C. 2008)).

In addition, venue in *Bivens* cases is governed by 28 U.S.C. § 1391(b).  *Stafford v. Briggs*, 444 U.S. 527, 544 (1980); *Cameron v. Thornburgh*, 983 F.2d 253, 257 (D.C. Cir. 1993); *Pollack*

*v. Meese*, 737 F. Supp. 663, 665 (D.D.C. 1990).  Under section 1391(b), a *Bivens* cause of action may only be brought in a judicial district where: (1) any defendant resides if all defendants reside in the same state; (2) a substantial part of the events or omissions giving rise to the claim occurred; or (3) any defendant may be found if there is no district in which the action may otherwise be brought (28 U.S.C. § 1391(b)).  In this case, venue is not proper in the United States District Court for the District of Columbia under 28 U.S.C. § 1391(b). The Defendants do not all reside in the District of Columbia. Also, the salient events or omissions giving rise to the Plaintiff's claims against Director Peters did not occur in the District of Columbia.   As a result, to the extent that the Complaint is construed as attempting to state a *Bivens* claim, it should also be dismissed pursuant to Rule 12(b)(3) for improper venue.

A case may be transferred to any district where venue is proper "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a).  "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness."  *Ctr. For Env't Sci., Accuracy & Reliability v. Nat'l Park Serv.*, 75 F. Supp. 3d 353, 356 (D.D.C. 2014) (internal quotation marks omitted).  "Thus, transfer . . . must . . . be justified by particular circumstances that render the transferor forum inappropriate by reference to the considerations specified in that statute."  *Id*. (internal quotation marks omitted).  "The movant bears the burden of persuasion that transfer of an action is proper."  *Id*.  Because the case could have been brought in the United States District Court for the Middle District of Pennsylvania and that District is the most convenient venue, the Court should transfer the case to that District.[7]

---

[7]     Defendants note that this case could have been brought in the Western District of Texas, where Plaintiff resides, and that district may be convenient for Plaintiff.  Though Defendants request transfer to the Middle District of Pennsylvania, the believe that transfer to the Western

### A.    This Case Could Have Been Brought in the Middle District of Pennsylvania

"The first step in resolving a motion for transfer of venue under § 1404(a) is to determine whether the proposed transferee district is one where the action 'might have been brought.'" *Ctr. For Env't Sci.*, 75 F. Supp. 3d at 356.  Under the general venue statute governing suits against officers or employees of the United States, venue can be found in a judicial district where (1) "a defendant in the action resides"; (2) "a substantial part of the events or omissions giving rise to the claim occurred"; or (3) "the plaintiff resides if no real property is involved in the action."  28 U.S.C. § 1391(e)(1).  Here, Plaintiff alleges that a BOP employee, Dr. Edinger, provided Plaintiff with improper medical care at USP Allenwood.  Compl. (ECF No. 2-1) ¶¶ 76-77, 85. Dr. Edinger was the Clinical Director at USP Allenwood, and that is where Plaintiff received the care in question.  Because "a substantial part of the events or omissions giving rise to the claim occurred" in the Middle District of Pennsylvania, venue is proper in that District.  *See* 28 U.S.C. § 1391(e)(1). Therefore, the case could have been brought in the Middle District of Pennsylvania.

### B.    Transfer to the Middle District of Pennsylvania is Otherwise Proper

After resolving the threshold inquiry, the Court must turn to the core of the matter, namely, whether the case is more conveniently handled in the Middle District of Pennsylvania rather than this District.  This inquiry requires the Court to "weigh the public and private interests." *McAfee v. U.S. Citizenship & Immigr. Servs.*, Civ. A. No. 19-2981 (DLF), 2019 WL 6051559, at *1 (D.D.C. Nov. 15, 2019).  In weighing transfer, "the Court considers the following private interest factors: (1) the plaintiffs' choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4)

---

District of Texas would also be proper—and either would be a more appropriate venue than this judicial district.

the convenience of the parties, (5) the convenience of the witnesses of the plaintiff and defendant, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof." *Bourdon v. Dep't of Homeland Sec.*, 235 F. Supp. 3d 298, 305 (D.D.C. 2017). There are three public interest factors that the Court must also consider in assessing a request to transfer: "(1) the transferee's familiarity with the governing laws and the pendency of related actions in the transferee's forum; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home." *Id*. at 308 (quotation marks omitted). Under these factors, a transfer to the Middle District of Pennsylvania is appropriate.

First, "Courts must normally afford deference to the plaintiff's choice of forum[, but] that deference is mitigated where the plaintiff's choice of forum has no meaningful ties to the controversy and no particular interest in the parties or subject matter." *United States v. Bollinger Shipyards, Inc.*, No. 11-CV-01388, 2012 WL 12987042, at **3-4 (D.D.C. March 30, 2012) (internal citations and quotation marks omitted). Even in cases where a Plaintiff files suit in his home district, that deference is easily overcome where "the plaintiff's choice of forum lack[s] meaningful ties to the parties, facts, and claims in the suit." *Poindexter v. D.C. Dep't of Corr.*, 892 F. Supp. 2d 104, 107 (D.D.C. 2012). Because all facts giving rise to this action occurred at USP Lewisburg in Pennsylvania, "[t]his factor . . . provides little if any support for maintaining venue in the District of Columbia." *Bourdon*, 235 F. Supp. 3d. at 305. Simply put, "venue cannot lie in the District of Columbia when a substantial part, if not all, of the [relevant acts] challenged in this action took place outside the District." *Jones v. Hagel*, 956 F. Supp. 2d 284, 289 (D.D.C. 2013). Further, when a government agency's headquarters is located in Washington, D.C., that fact, "without more, provides little basis for deferring to a party's choice of forum." *Bollinger*

- 29 -

*Shipyards, Inc.*, 2012 WL 12987042 at *4 (citing F.T.C. v. Cephalon, Inc., 551 F. Supp. 2d 21, 27 (D.D.C. 2008)).

Second, the United States seeks to transfer this action to the Middle District of Pennsylvania, as that is where Plaintiff's claims arose and is where most evidence, witnesses, and the greatest public interest in the facts are found.  The Court "gives some weight to defendant's choice of forum," especially "when the other interests favor transfer and when plaintiff's choice does not receive the usual deference."  *Parker v. United States*, No. 20-CV-0430, 2020 WL 10486669, at *4 (citing *Ngonga v. Sessions*, 318 F. Supp. 3d 270, 275 (D.D.C. 2018)).  This factor weighs in favor of transfer.

Third, all the events underlying the exhausted claims in Plaintiff's Complaint occurred in the Middle District of Pennsylvania, not in this District.  Though the Complaint contains many allegations relating to events that allegedly occurred in Washington, D.C., as discussed above, Plaintiff did not name any defendants in connection with those allegations or exhaust related claims.  In these circumstances, this factor is "of predominant importance[.]"  *Bourdon*, 235 F. Supp. 3d at 305.  Plaintiff alleges that medical staff improperly provided him with medical care while he was incarcerated at USP Lewisburg.  This makes the Middle District of Pennsylvania "the locus of the complaint" and weighs heavily in favor of transfer.  *See Parker*, 2020 WL 10486669, at *3.

Fourth, the convenience of the witnesses is arguably "[t]he most critical factor" of the remaining factors.  *See id*. (cleaned up).  Plaintiff, a resident of Texas, does not live in this District, and, as noted, he alleges that individuals located in Pennsylvania committed tortious acts, so there are not any witnesses with ties to this District.   Courts in this District have transferred cases out of this District in materially identical circumstances and even when the plaintiff was a DC resident

when the suit was filed.  *See id.* (transferring case with DC resident plaintiff to Texas because all of the alleged wrongdoing occurred while plaintiff was a prisoner at the Beaumont Penitentiary in Texas); *Thomas v. United States*, Civ. A. No. 24-0404 (RDM), 2024 WL 2167624, at *2 (D.D.C. May 10, 2024) (transferring case to Kentucky because all alleged wrongdoing occurred while plaintiff was a prisoner at the United States Penitentiary in Inez, Kentucky); *McCoy v. United States*, Civ. A. No. 06-0762 (PLF), 2006 WL 2474102, at *2 (D.D.C. Aug. 25, 2006) (transferring case to Kansas because the District's only connection to the litigation was plaintiffs' residence in the District and their sentences imposed by the D.C. Superior Court).  "Courts have consistently transferred actions when the majority of witnesses live near the transferee forum."  *Mathis v. Geo Grp., Inc.*, 535 F. Supp. 83, 87 (D.D.C. 2008).

Finally, access to sources of proof favors transfer.  Any documentary materials, including BOP materials and medical records, would be in Pennsylvania.  *See Thomas*, 2024 WL 21267624, at *2; Parker, 2020 WL 10486669, at *4.  Further, transferring this case to Pennsylvania is proper because witnesses and evidence are "far beyond the Court's 100-mile limit of the subpoena power of this Court."  *Chung v. Chrysler Corp.*, 903 F. Supp. 160, 165 (D.D.C. 1995) (citing Fed. R. Civ. P. 45).  All these factors easily overcome Plaintiff's choice of forum in this District and counsel for transfer of this case to Pennsylvania.

The remaining factors—the congestion of the courts and the transferee court's familiarity with the law—also warrant consideration.  There can be no dispute that each District (this District and the Middle District of Pennsylvania) faces congested dockets.  *See* United States District Courts-National Judicial Caseload Profile (Mar. 31, 2025), available at fcms_na_distprofile0331.2025.pdf.  That factor is neutral.  And while there is no reason to suspect that any federal district court is unfamiliar with tort law or the FTCA, the Middle District of

Pennsylvania will have more familiarity with Pennsylvania tort law, which would govern any FTCA claim.  *See* 28 U.S.C. § 1346(b).  Finally, Pennsylvania courts have a decidedly stronger interest in deciding local controversies at home.  *Poindexter*, 892 F. Supp. 2d at 108 ("Courts in this district have consistently held that the public interest favors allowing the state in which the purported wrongful acts occurred to settle conflicts arising from conduct committed entirely in that state.").

For these reasons, the Court should transfer this case to the Middle District of Pennsylvania.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed as to all but the exhausted FTCA claims and the remainder of the civil action should be transferred to the Middle District of Pennsylvania.

Dated: February 3, 2026
        Washington, DC

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney


By: _____/s/ Sian Jones_____
        SIAN JONES, D.C. Bar #1024062
        Assistant United States Attorney
        601 D Street, NW
        Washington, D.C., 20530
        (202) 252-2578

*Attorneys for the United States of America*

- 32 -